THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DONALD KUNATH, Defendant-Appellee.

Second District    No. 80-561

Opinion filed August 17, 1981.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Charles W. Clark and Ralph E. Madsen, both of Madsen and Clark Associates, of Crystal Lake, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

On March 8, 1980, the defendant, Donald L. Kunath, was arrested for possession of a controlled substance, felony possession of cannabis and illegal transportation of alcoholic liquor. Following a preliminary hearing, the defendant was charged in a single count information with unlawful possession of a controlled substance only. On May 27, 1980, defendant filed a motion to suppress the following evidence: (1) a substance containing less than 30 grams of lysergic acid diethylamide (LSD); (2) more than 30 grams but not more than 500 grams of cannabis; and (3) a bottle partially filled with alcohol. Following a hearing thereon, the trial court granted defendant's motion to suppress and the State now appeals.

The pertinent facts surrounding defendant's arrest testified to by the various witnesses at the motion to suppress are summarized as follows. On March 7, 1980, Wauconda police officer George Roberts observed a 1968 Pontiac "slide through" a stop sign, but did not stop the vehicle at that time. Later that evening, Roberts saw the same vehicle in an apartment parking lot, traveling "the wrong way" down the driveway. There were no signs marking the proper direction of travel in this private parking area, however, and Roberts conceded that no violation of the law occurred. Defendant was a passenger in that vehicle, seated in the right side of the back seat.

Roberts testified that as he approached the vehicle he observed the defendant "reach under the front passenger seat." Roberts then put his spotlight on the vehicle and saw defendant again reach under the seat, although defendant testified he only bent over once. At that point, Roberts exited his squad car and approached the vehicle, requesting the driver and the three passengers to step out, which they did. Roberts then went to the car and reached under the seat and found a plastic bag containing what appeared to be marijuana and two small envelopes. He secured these items in the squad car. He also observed an open bottle of brandy under the seat. He testified on cross-examination that these items were not observable from outside the car, but that with the car door open he saw the objects when he bent down and shined the flashlight at that area. Later that evening, at the police station, defendant admitted that the contraband seized belonged to him.

The trial court concluded that the search and seizure was unlawful since the stop of the vehicle in which defendant was a passenger was not founded on probable cause, that the evidence was not in plain view, and that defendant had the "status" to challenge the admissibility of the evidence on Fourth Amendment grounds despite the recent United States

Supreme Court decision in *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547. Consequently, the evidence seized was suppressed by the court, and a timely notice of appeal was filed by the State.

On appeal, the State concedes that the Wauconda police acted without probable cause in stopping the vehicle in which defendant was a passenger. Despite the lack of probable cause, the State argues that defendant, as a "mere passenger" in a vehicle owned by another, may not assert that his Fourth Amendment rights were violated. Defendant, on the other hand, contends that the evidence was properly suppressed because "the stop occurred without a reasonable expectation that criminal activity was afoot" and that he had a reasonable expectation of privacy in that automobile.

Initially, we address the State's misplaced reliance on *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, and its progeny, *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, and *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556.

In *Rakas*, the defendants were convicted by an Illinois jury of armed robbery and later appealed their convictions, arguing that the trial judge erred in refusing to suppress as evidence a sawed-off rifle and rifle shells which had been seized by the police following a search of an automobile in which the defendants had been passengers. In upholding the convictions, the Supreme Court noted that the defendants failed to assert a property or possessory interest in the automobile or the property seized, and, citing *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, held that an illegal search only violates the Fourth Amendment rights of those who have a legitimate expectation of privacy in the invaded place. In *Rakas*, the court abandoned the traditional standing analysis in search and seizure cases, recognizing that such an inquiry "is more properly subsumed under substantive Fourth Amendment doctrine." (*Rakas*, 439 U.S. 128, 139, 58 L. Ed. 2d 387, 398, 99 S. Ct. 421, 428.) In its stead, the court substituted the following inquiry: "whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." *Rakas*, 439 U.S. 128, 140, 58 L. Ed. 2d 387, 399, 99 S. Ct. 421, 429.

Subsequently, in *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, the Supreme Court explicitly overruled the "automatic standing" rule of *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, and held that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have been violated. The overruled "automatic standing" rule of *Jones* had provided that, in cases where possession

of the seized evidence was an essential element of the offense charged, the defendant was not required to show that his own Fourth Amendment rights had been violated, but only that the search and seizure of the evidence was unconstitutional.

The same day *Salvucci* was decided, the Supreme Court handed down its decision in *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556, holding that, while legal ownership or possession of a seized good is one factor to be considered, it is not determinative on the question of whether the defendant has a protectible Fourth Amendment interest in it. In so deciding, the court rejected the defendant's argument that, because he claimed ownership of certain drugs seized from his companion's purse, he should have been entitled to challenge the search regardless of his expectation of privacy.

While these recent decisions herald a new era in the law of "standing" in search and seizure cases, they are not determinative herein, for our initial concern is with the stop of the vehicle in which defendant was a passenger, not with the subsequent search itself. *Rakas* did not deal with the question of standing to contest an unconstitutional *stop*. (*United States v. Williams* (5th Cir. 1979), 589 F.2d 210.) Therefore, *Rakas, Salvucci* and *Rawlings* are relevant only to the issue of the search itself, which we need not reach in this decision.

The court in *Rakas* made clear, in the following language, that it was concerned only with the search of the vehicle itself and not with the legality of the stop:

"Because we are not here concerned with the issue of probable cause, a brief description of the events leading to the search of the automobile will suffice." (439 U.S. 128, 130, 58 L. Ed. 2d 387, 392, 99 S. Ct. 421, 423.)

"The petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle. Rather, petitioners assert that their constitutionally protected interest in privacy was violated when the police, after stopping the automobile and making them get out, searched the vehicle's interior, where they discovered a sawed-off rifle under the front seat and rifle shells in the locked glove compartment. The question before the Court, therefore, is a narrow one: Did the search of their friend's automobile after they had left it violate any Fourth Amendment right of the petitioners?" 439 U.S. 128, 150-51, 58 L. Ed. 2d 387, 406, 99 S. Ct. 421, 434 (Powell, J., concurring).

Here, in contrast, although the motion to suppress is very general, both theories were considered by the trial court, *i.e.*, that the stop of the automobile was improper for lack of probable cause, and whether the

subsequent search was violative of defendant's Fourth Amendment rights. We note also that, in its written order suppressing the evidence, the trial court found "that the initial stop of the vehicle in which defendant was a passenger was without probable cause * * *." Accordingly, we consider defendant's contention on appeal that the evidence was suppressed properly as a fruit of the prior illegal stop.

■■■ Regardless of whether defendant had a legitimate expectation of privacy in the contents of the automobile so as to challenge successfully the search thereof, as a passenger he can challenge the stopping of the vehicle since his personal liberty and freedom were intruded upon by that act. (See generally 3 W. LaFave, Search and Seizure §11.3 (1978).) The Fourth and Fourteenth Amendments of the United States Constitution forbid unreasonable searches *and seizures*, and it is clear that stopping an automobile and detaining its occupants constitutes a "seizure" of those persons. (*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391. See also *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279.) And, for the evidence seized as a result of that stop to be admissible, the stop must not have been unreasonable. *People v. Deppert.*

For example, in *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, decided by the Supreme Court after *Rakas* but before *Salvucci* and *Rawlings*, the court upheld an order suppressing the evidence seized from an automobile occupied by the defendant which had been stopped by the police solely in order to check the driver's license and registration. In analyzing the propriety of the stop, the court emphasized that individuals operating or traveling in an automobile have a reasonable expectation of remaining free from governmental intrusion while traveling in an automobile on the highway, even though the court was unable to determine from the lower court record whether the defendant was the operator of the vehicle or a mere passenger. Also, significantly, the court never made reference to its earlier decision in *Rakas*, which requires the defendant to prove he had a legitimate expectation of privacy in order to challenge successfully an automobile search.

Also relevant is our recent decision in *People v. Fox* (1981), 97 Ill. App. 3d 58, 421 N.E.2d 1082, which involved an automobile passenger's challenge to a police stop of the vehicle in which he was riding. In *Fox*, we upheld a trial court ruling suppressing certain evidence seized as a result of that detention, where the police did not have grounds for a *Terry* stop, even though the defendant was only a passenger in that vehicle.

In short, it is clear that defendant, as an occupant of the vehicle stopped by police, can challenge the *stop* of the automobile since it entailed an infringement of his personal freedom. The State has conceded in its brief that the Wauconda police acted without probable cause in making a stop of the car, and after reviewing Officer Roberts' testimony,

we too conclude that his stop of the car was more in the nature of a mere hunch (see *People v. McGowan* (1977), 69 Ill. 2d 73, 78, 370 N.E.2d 537) rather than on specific and articulated facts which, combined with rational inferences from those facts, reasonably warrant the investigative intrusion. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 722, 410 N.E.2d 209.) We conclude that the officer could not have reasonably inferred from the circumstances that the defendant or driver of the vehicle was committing, was about to commit or had committed an offense to justify a stop pursuant to section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 107—14).

Accordingly, we hold that the stop herein was improper and constituted a violation of defendant's constitutional rights to be free from unreasonable seizures of his person. The evidence which was subsequently seized as a direct result of that improper detention was properly suppressed by the trial court as the fruit of that illegal stop. *People v. Myles* (1978), 62 Ill. App. 3d 931, 934, 380 N.E.2d 944.

In light of this conclusion, we need not address the issue concerning whether the police search of the automobile constituted a violation of defendant's constitutional rights to be free from unreasonable searches.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.