Mary K. LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 63237.

Court of Criminal Appeals of Texas, En Banc.

Feb. 22, 1984.

J.K. Rusty Wall, Midland, for appellant.

Vern F. Martin, Dist. Atty. and David L. Joers, Asst. Dist. Atty., Midland, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of less than two ounces of marihuana. After the jury found appellant guilty, the trial court assessed punishment at six months and $300.00 probated.

In her first ground of error, appellant contends that the trial court erred in not suppressing the physical evidence. Appellant relies on the Fourth Amendment to the United States Constitution, Art. 1, Sec. 9 of the Texas Constitution, and Art. 38.23, V.A.C.C.P.

Officer Terry Lowe of the Midland Police Force was on patrol on the evening of February 8, 1979. He spotted an automobile that had no license plate light. The license plate was attached to the car at one end by wire. As Lowe turned on his police lights and motioned for the automobile to pull over, he noticed a passenger in the front right seat make a movement toward the floorboard.

Before unsnapping his holster strap and approaching the vehicle, Lowe asked, over his patrol car radio, for a check on the license plate number in order to determine if the car was stolen.

The car was driven by Oscar Zubiate. Appellant was sitting in the right rear passenger seat. There was also a passenger in the left rear seat. The person in the front passenger seat had a black hat on his lap.

To Lowe, the occupants seemed excessively nervous, but they cooperated fully. The officer wrote out a ticket, citing Zubiate for failure to have a license plate light. Lowe asked for identification from the car's occupants and all of them complied.

About this time, Officer Shupp fortuitously arrived on the scene. Shupp watched the car while Lowe went to run a warrant check on the identifications he had collected.

The identifications turned up no warrants. Lowe also received word that the car was registered to Zubiate's mother.

Lowe returned to the car and ordered all of the occupants out. He frisked all of them except the appellant, but found nothing.

While Shupp watched the occupants, who were not free to leave, Lowe searched the car. As soon as he opened the door, Lowe smelled unburned marihuana. He looked under the front passenger seat where he had seen the passenger lean down and found a bag containing marihuana. He shined his flashlight on the backseat and saw a baggy containing a green leafy substance protruding from a zipper suitcase. Lowe also saw what appeared to be marihuana seeds scattered over the backseat. Appellant and the others were arrested.

Appellant does not challenge the initial stop of Zubiate's vehicle. She challenges the continued detention of the car *after* Lowe cited Zubiate for failure to have a license plate light. She also challenges her removal from the vehicle. According to appellant, the search of the car resulted from her illegal detention and removal from the vehicle.

At the outset we must decide an issue not raised in the trial court and not mentioned by either party on appeal: whether appellant's claim is based on a violation of her own Fourth Amendment rights, or, instead, whether appellant seeks to vicariously assert the rights of the automobile driver.

■ The State does not have the burden of listing or verbalizing in the trial court every possible basis for holding a search legal or else waive that basis for urging on appeal the validity of the search. *Sullivan v. State,* 564 S.W.2d 698 (Tex.Cr.App.1977).

■ At first blush, the United States Supreme Court's decision in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), seems to dispose of appellant's claim. Like the petitioners in *Rakas,* appellant had no possessory interest in Zubiate's vehicle, nor does the record indicate that her status was anything more than that of a passenger. In *Rakas* the Supreme Court held that mere presence does not entitle one to challenge the search of a vehicle. That passengers are in a car with the permission of the owner is not determinative of whether they have a legitimate expectation of privacy.

The petitioners in *Rakas,* however, did not challenge the initial stop of the vehicle in which they rode or their removal from it. Two concurring justices and four dissenters found this to be significant. Thus, the decision in *Rakas* presumably does not mean

that a mere passenger automatically lacks standing to challenge the search of a vehicle, even if the search has been come at by exploitation of an infringement on his personal Fourth Amendment rights. This, at any rate, appears to be the position of at least six Supreme Court Justices, as well as a leading commentator on the Fourth Amendment. See 3 W. LaFave, Search and Seizure, Sec. 11.3(e) (Supp.1983).

The Illinois Court of Appeals, when faced with this same issue, stated in *People v. Kunath,* 99 Ill.App.3d 201, 54 Ill.Dec. 621, 425 N.E.2d 486 (1981):

"The court in *Rakas* made clear ... that it was concerned only with the search of the vehicle itself and not with the legality of the stop ...

"Here, in contrast, although the motion to suppress is very general, both theories were considered by the trial court; i.e., that the stop of the automobile was improper for lack of probable cause, and whether the subsequent search was violative of defendant's Fourth Amendment rights ...

"Regardless of whether defendant had a legitimate expectation of privacy in the contents of the automobile so as to challenge successfully the search thereof, as a passenger he can challenge the stopping of the vehicle since his personal liberty and freedom were intruded upon by that act ... The Fourth and Fourteenth Amendments of the U.S. Constitution forbid unreasonable searches *and seizures,* and it is clear that stopping an automobile and detaining its occupants constitutes a 'seizure' of those persons ... And, for the evidence seized as a result of that stop to be admissible, the stop must have not been unreasonable ...

"In short, it is clear that defendant, as an occupant of the vehicle stopped by police, can challenge the *stop* of the automobile since it entailed an infringement of his personal freedom ..." 54 Ill.Dec. at 624, 625, 425 N.E.2d at 489, 490.

■ Thus, it would seem that after *Rakas,* a mere passenger can challenge the search of the automobile in which he is riding *if* the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights.

Turning again to the facts of the instant case, it must be remembered that appellant does not challenge the initial stop of herself and others in the Zubiate vehicle but, rather, challenges her *continued detention* after a certain point in time and her removal from the vehicle.

Assuming arguendo that the continued detention of the vehicle and the removal of the occupants from it were illegal under the Fourth Amendment, the relevant question becomes whether the search of Zubiate's vehicle was come at by exploitation of *appellant's* continued detention and removal from the vehicle.

■ As *Wong Sun* teaches, showing that a search was come at by exploitation of the primary illegality requires more than showing a mere "but-for" relationship:

"... We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal action of the police. Rather, the more apt question in such a case is, 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." 371 U.S. 471 at 487–488, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441 (1963).

■ It is clear from the record that appellant's removal from the Zubiate vehicle was not even a "but-for" cause of the subsequent search. Officer Lowe never physically intruded himself into the backseat. He looked under the right front seat and shined his flashlight into the back. He had seen the zipper suitcase prior to ordering the occupants out of the car, though he did not see the bagged marihuana in it until he shined his flashlight. A fair reading of the record indicates that Lowe could have performed his search without removing the

car's occupants, but that he did remove them for the sake of his convenience and safety.

The continued detention of appellant was likewise not a "but-for" cause of the search. Once the initial legal detention became an illegal one, the appellant's presence was irrelevant to the officer's decision to search. Put another way, Lowe could have let appellant leave without hampering his ability to search the car. Thus, in no way was *her* detention necessary to perform the search.

In summary, the purportedly illegal search was not come at by exploitation of the *appellant's* continued detention or removal from the vehicle. Appellant's first ground of error is overruled.

■ In her second ground of error appellant challenges the admission of an extraneous offense into evidence at trial and a subsequent mention of the offense during closing argument.

When the purportedly extraneous offense was mentioned by Zubiate under cross-examination by the State, appellant's counsel objected as follows:

"MR. WALL: Now, Your Honor, I object to that. That is clearly improper. Counsel knows that. And I object to that question most strenuously."

The objection was overruled. A general objection is insufficient to preserve error. *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr. App.1980).

The allegedly improper reference to the extraneous offense during closing argument was objected to on the grounds that, "Counsel has gone outside of the record, bringing in other matters." The trial court responded, "The court will tell the jury that you heard all of the evidence from the witness chair, and the court can't comment as to what's in the evidence—in the record. It is up to the jury to determine." Appellant's counsel did not press his objection further.

■ An objection to argument must be pressed to the point of procuring a ruling or the objection is waived. The trial court's statement that the jury would determine the evidence was not sufficient to preserve

error. *DeRusse v. State,* 579 S.W.2d 224 (Tex.Cr.App.1979). The ground of error is overruled.

■ In her third ground of error, appellant complains that the trial court erred in refusing to grant her request for continuance during the hearing on the motion for new trial in order to find a missing witness. Appellant did not file a written motion for continuance. An oral motion for continuance presents nothing for review. *O'Neal v. State,* 623 S.W.2d 660 (Tex.Cr.App.1981); Art. 29.03, V.A.C.C.P.

■ In her final ground of error, appellant challenges the sufficiency of the evidence. As noted earlier, the appellant was seated in the right rear seat of the car. Loose marihuana particles were found scattered about on the rear seat of the car. In the center of the rear seat and between where the appellant had been sitting and the other rear seat, the officers found a package of cigarette rolling papers; they were the same brand as those found rolled into marihuana cigarettes in the car. Two rolled cigarettes were found in the floorboard in the right rear seat of the car. A paper sack with a partially full baggy of marihuana was found in the right rear floorboard. The interior of the car had a distinct odor of unburned marihuana. The evidence is sufficient to show that appellant either singly or jointly possessed marihuana as charged. *Deshong v. State,* 625 S.W.2d 327 (Tex.Cr.App.1981); *Hahn v. State,* 502 S.W.2d 724 (Tex.Cr.App.1973); *Orosco v. State,* 164 Tex.Cr.R. 257, 298 S.W.2d 134 (1957).

The judgment is affirmed.

CLINTON, Judge, dissenting.

Elsewhere I have demonstrated that until 1925 there was such a paucity of search and seizure law in this State that courts took guidance from many outside sources, including the Supreme Court of the United States, which had construed constitutional provisions similar to our own Article I, § 9. *Brown v. State,* 657 S.W.2d 797, 799–807 (Tex.Cr.App.1983). After enactment of the

Texas "exclusionary rule," former Article 727a, C.C.P.1925 (now Article 38.23, V.A.C. C.P.), the Court continued that same methodology.

On the matter of "standing" the opinion of the Court in *Craft v. State,* 107 Tex.Cr.R. 130, 295 S.W. 617 (1927) soon came to be regarded as the leading case.[1] The members of the Court were in disagreement "relative to the requisites of an affidavit for a search warrant," but were unanimous that such a determination was not necessary because "the judgment must be affirmed for the reasons to be given," *id.,* 295 S.W. at 617. The facts were that acting under a search warrant several parties entered and searched the private dwelling of one Clem Hunt and therein found Hunt and Craft engaged in making intoxicating liquor. The Court found that Craft could not object to evidence obtained as a result of the search, even though it might have been illegal. It explained:

"When the Thirty-Ninth Legislature (Acts 1925) p. 186, article 727a, C.C.P. (1925) prohibited the admission of evidence illegally obtained, it is believed the courts of this state by such enactment were required to make the same application of the principle involved as had theretofore been made by the Supreme Court of the United States, and by the courts of other jurisdictions in excluding evidence obtained in violation of the constitutional provisions. The rule is concisely stated in section 12, p. 62, Cornelius on Search and Seizure, thus:

'The right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else.' Supporting the text see [citations of federal cases and discussion thereof omitted]. See, also, [citations of cases from other State jurisdictions omitted].

Our own courts have given effect to the same principle in *Wright v. State,* 103 Tex.Cr.R. 534, 281 S.W. 864; *Dozier v. State,* 102 Tex.Cr.R. 413, 289 S.W. 45. It is believed that appellant has no just ground of complaint against the testimony of the officers because the residence searched did not constitute *an invasion of his rights." Id.,* 295 S.W. at 618.[2]

That principle, then, was and is a part of the search and seizure jurisprudence of this State and an important feature of State constitutional law under Article I, § 9. The opinion of the Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), is not controlling when we come to decide whether there was an invasion of appellant's rights under the Constitution and laws of Texas. *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967); see *Howard v. State,* 617 S.W.2d 191 (Tex.Cr.App.1979).

"The security of one's privacy against arbitrary intrusion by the police ... is basic to a free society," and "[t]he knock at the door, whether by day or by night, as a prelude to a search, without authority of law but solely on the authority of the police, ... [is] condemned as inconsistent with the conception of human rights enshrined in the history and the basic constitutional documents of English-speaking peoples." *Wolf v. People of the State of Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782

---

1. *Craft v. State,* supra, was quickly followed in, e.g., *Stansberry v. State,* 107 Tex.Cr.R. 54, 295 S.W. 604 (1927); *Wilkirson v. State,* 107 Tex. Cr.R. 247, 296 S.W. 558 (1927); *Allman v. State,* 107 Tex.Cr.R. 439, 296 S.W. 580 (1927) and *Jenkins v. State,* 108 Tex.Cr.R. 184, 299 S.W. 642 (1927); see also host of citations in Shepherd's Citator. Previously the Court had held without elucidation that in a prosecution for cattle theft an accused could not complain of testimony about finding head and entrails of a heifer in a pasture belonging to his mother, on grounds that parties finding them had no search warrant. *Dozier v. State,* 105 Tex.Cr.R.

413, 289 S.W. 45 (1929). And in *McFarlan v. State,* 106 Tex.Cr.R. 384, 292 S.W. 885 (1927), the Court held that an accused was "not in a position to invoke the protection of law relative to search warrants" with respect to his own liquor being found and seized in premises of another without a warrant; the Court cited Cornelius on Search and Seizure and *Dozier v. State,* supra.

2. All emphasis is added by the writer of this opinion unless otherwise indicated.

(1949). *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Cr.App.1972). In Texas, from the beginning "that protection against invasion of privacy has remained essentially the same," *Brown v. State*, supra, 657 S.W.2d at 800–801. A citizen does not lose that protection because seen standing on a sidewalk in El Paso, *Ceniceros v. State*, 551 S.W.2d 50, 52–54, 55 (Tex.Cr.App.1977), or sitting as a passenger in an automobile in Houston, *Murphy v. State*, 378 S.W.2d 73, 74 (Tex.Cr. App.1964). Yet here appellant was thoroughly stripped of her privacy "solely on the authority of the police," without the slightest suggestion of any wrongdoing on her part to justify it.

The search that Lowe conducted, according to the majority, did not result from an infringement of appellant's privacy rights as a passenger in the Zubiate car. While the majority seems willing to concede, at least arguendo, that her rights were invaded, it finds that the search of the vehicle "was not come at by exploitation of the *appellant's* continued detention or removal from the vehicle." [3] With deference, I cannot agree that the majority has taken the right approach to the problem nor resolved it properly.

"The word 'automobile' is not a talisman in whose presence [protection of Article I, § 9] fades away and disappears." *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). Whatever the degree of difference we treat motor vehicles in relation to houses for purposes of ascertaining a legitimate expectation of privacy therein, in this day and time few would dispute that a passenger in an automobile may rely upon protection of our constitutional guarantees no less than one who occupies a telephone booth. *Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Because

they do indeed protect "people—and not simply 'areas'—against unreasonable searches and seizures," *Katz*, supra, at 353, 88 S.Ct. at 512, then "[w]herever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures," *Katz*, supra, at 359, 88 S.Ct. at 515. In the instant case, appellant was deprived of her freedom over and over again after the initial stop of the automobile in which she was a passenger.

First, Officer Lowe obtained identification from each occupant of the automobile though he had no legal basis whatever for demanding them. *Tunnell v. State*, 554 S.W.2d 697, 698 (Tex.Cr.App.1977); *Ceniceros v. State*, supra, at 54 (Roberts, J., dissenting). After issuing a traffic citation to Mr. Zubiate for failure to have a license plate light, Lowe still retained the identifications. See *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

Second, Officer Lowe, having issued a traffic citation to Zubiate, was not authorized to retain appellant's identification for any purpose. His police business with the automobile and its occupants was done.[4]

Third, notwithstanding a "wants and warrants" check he was without authority to make produced nothing outstanding, and a computer check of the license plate revealed that the car was registered to Zubiate's mother and no indication it was stolen, Lowe continued to detain the car and its occupants while he conferred with Officer Shupp. Obviously they were not free to leave and Lowe still held their identifications.

Fourth, though the record does not make clear exactly what Lowe told Shupp other than his reason for making the initial stop, and it tells us nothing about what Shupp may have said to him, Lowe then ap-

---

**3.** Emphasis is added in the majority opinion.

**4.** The offense for which Lowe made the stop is proscribed by Article 6701d, § 111(c), V.A.C.S. Section 148(a) of that Article provides that when a person situated as Zubiate is not immediately taken before a magistrate, the arresting officer "shall prepare ... written notice to appear in court" containing certain prescribed data; pursuant to § 148(d) once Zubiate gave his written promise to appear by signing that notice, the officer was required to "forthwith release [Zubiate] from custody." Clearly Lowe did not comply with the law, thereby rendering himself "guilty of misconduct in office," § 148(e).

proached the car and asked all four occupants to get out.[5] At that point if there were articulable facts and circumstances for his doing so, rather than hunch or suspicion, the record fails to inform us what they were. Thus, anew appellant was subject to yet another invasion of her rights, as were the other occupants of the car. *Tunnell v. State,* supra; *Ceniceros v. State,* supra, at 54–55 (Opinion on Rehearing); *Murphy v. State,* supra.

Fifth, when they left the car the occupants closed both doors behind them, indicating a modicum of expectation of privacy therein.[6] (Considering the order in which passengers usually alight from a sedan, one might properly assume that appellant was the last one out the passenger's side.) The officers moved them from the street onto a sidewalk some ten to twenty feet, another violation of rights of appellant and her companions.

Finally, in custody of Shupp appellant and the others watched as Lowe made a warrantless search of the interior of the automobile, solely on his authority as a peace officer.

Given all those deprivations of freedoms through unconstitutional intrusions, the wrong question is posed by the majority, *viz:* "[T]he relevant question becomes whether the search of Zubiate's vehicle was come at by exploitation of *appellant's* continued detention and removal from the vehicle."[7] I suggest the real question is whether the search of the Zubiate vehicle was come at by exploitation of the continued detention of *the car and its occupants* after Lowe had completed his authorized police business by issuing a traffic citation

to Zubiate for failure to have a license plate light. See note 4, supra.

In the situation presented by the facts of this matter the majority errs in isolating the person of appellant from her interests. Paraphrasing Justice White, so far as we know Zubiate "might have expressly granted or intended to grant exactly such [a temporary possessory] interest" in the automobile when he permitted appellant and the others to join him. *Rakas v. Illinois,* supra, 439 U.S. at 167–168, n. 19, 99 S.Ct. at 443, n. 19. Indeed, the recreational activity that they seem to have been contemplating, if not actually engaging in at the time, indicates that kind of a grant by Zubiate.

Moreover, sitting in the right rear passenger seat of the Zubiate vehicle, appellant's expectations were not limited to the security of her person or the space she occupied. Though the constitutional rights under consideration are said to be "personal rights," in real life expectations of privacy may be and often are shared with others. *Ibid.* In her own right, and to the extent of her share of a common right, appellant is entitled to complain that the Zubiate car and its occupants should not have been kept under "car arrest" while peace officers serially violated her other rights in exploring for "whatever might turn up," *Adair v. State,* 427 S.W.2d 67, 72 (Tex.Cr.App.1967) (Onion, P.J., dissenting), and when nothing turned up, by searching and then seizing items from the car.

I respectfully dissent.

TEAGUE, J., joins.

MILLER, Judge, dissenting.

As pointed out by the majority opinion, the petitioners in *Rakas v. Illinois,* 439 U.S.

---

**5.** At trial, Lowe testified that he had not removed the occupants earlier because "I would rather have the four individuals contained in the car then [sic] outside, with just me by myself." In response to a leading question from the prosecutor, he agreed that he did not want to "agitate" anyone until Shupp arrived. As noted earlier, though, Shupp's arrival was apparently unexpected.

**6.** There was also seized and admitted in evidence as State's Exhibit 15, a paper sack con-

taining a baggie of marihuana weighing 1.211 ounces. It and two marihuana cigarettes were found on the floor of the right rear passenger area, practically at the feet of appellant where the State contended she sat on the passenger seat; the jury obviously agreed, for despite all the other marihuana and urgings by the State to find her guilty as a party, the jury limited appellant's possession to less than two ounces.

**7.** Emphasis is added in the majority opinion.

128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), objected only to the search that was conducted, and not to the initial stop of the vehicle or their removal from it. In a concurring opinion, Mr. Justice Powell and Chief Justice Burger stressed that the question in *Rakas* was "a narrow one." As they pointed out:

"The petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle."

*Id.* at 439 U.S. 150, 99 S.Ct. 434 (Concurring Opinion of Powell, J.).

Likewise, the four dissenting Justices observed that *Rakas* would not prevent a passenger from arguing that any evidence seized was a fruit of either an illegal stop or an illegal detention of the person:

"Thus, petitioners of course have standing to challenge the legality of the stop, and the evidence found may be a fruit of that stop. See *United States v. Martinez-Fuerte,* 428 U.S. 543, 548, 556, 96 S.Ct. 3074, 3078, 3082, 49 L.Ed.2d 1116 (1976). Petitioners have not argued that theory here, perhaps because the justification necessary for such a stop is less than that needed for a search. See *Terry v. Ohio, supra. Nor have petitioners chosen to argue that they were "arrested" in constitutional terms as soon as they were ordered from the vehicle and that the search was a fruit of that infringement on their personal rights.*"

*Id.* at 439 U.S. 161, n. 5, 99 S.Ct. 439, n. 5 (Dissenting Opinion of White, J.) (Emphasis added).

In this case, appellant concedes that Officer Lowe was justified in initially stopping the automobile. However, at the hearing on her motion to suppress, she urged that she and her companions had been unjustifiably forced out of the car so that Officer Lowe might search the vehicle. In addition, she contended that she had been illegally arrested, with the subsequent search constituting a fruit of the impermissible arrest under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). While it is clear from the record that no formal arrest took place before the search, neither appellant nor her companions volunteered to leave the car, and Officer Lowe admitted they would not have been permitted to leave until he concluded his search. Accordingly, regardless of whether any "arrest" took place, appellant was obviously "seized" within the meaning of the fourth amendment. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ragan v. State,* 642 S.W.2d 489, fn. 4 (Tex.Cr.App.1982).

Given that appellant was thus detained, and assuming for the moment that the detention was unlawful, we must decide whether appellant is thereby entitled to challenge the subsequent search of the vehicle on the basis suggested by six Justices in the *Rakas* decision. In this connection, the difficult question is one not touched upon in *Rakas:* how can a search of a vehicle ever be said to be the "fruit" of an illegal detention[1] of a passenger? Or, to frame the matter somewhat differently, if appellant is "aggrieved" in that she was the victim of an unlawful seizure, should that entitle her to complain also of the search, which, analytically at least, was the violation of a distinct fourth amendment interest of another? I would answer that question affirmatively, and hold today that passengers may challenge the search of an automobile when they have been illegally detained, at least where the detention is for the sole purpose of effectuating the search.

I would reach this result for several reasons. First, I start from the premise that automobile passengers and driver alike have a legitimate expectation of privacy as to their persons as well as to their property. This expectation, however, entails much

---

1. I speak here of appellant's removal from the car and subsequent forced wait. The same theoretical difficulties would arise, of course, were the initial stop challenged. Indeed, regardless of whether a passenger is removed, an initially lawful stop that is transmuted into a general exploratory search would present the same issue—an illegal detention—as a stop invalid from its inception.

more than the hope that police officers will not physically lay hands on them without cause; implicit also is the assumption that they will not be unjustifiably separated from the vehicle in which they are riding, whether the separation signals a rude but temporary halt to their journey, or a permanent setback to the itinerary. Thus, where officers order a passenger from a vehicle, they intrude not merely on his expectation of going his way, but also of going that way in his chosen manner—by automobile.[2]

In this sense, a passenger does have an interest in a vehicle, an interest that is at the same time distinct from, and connected with, his interest in his personal integrity. And although this interest is not controlling, it cannot be altogether ignored, either. As Justice Rehnquist took pains to note in *Rakas,* "we would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy...." *Id.* at 439 U.S. 148, 99 S.Ct. 433. In sum, we cannot say that the search was entirely unrelated to any of appellant's valid expectations, just as it could not be argued that appellant's detention was unconnected with Officer Lowe's desire to search the car. Much to the contrary, it seems to me that the seizure of appellant's person was inextricably bound up with the search of the vehicle.

As a practical matter, then, the search and the detention were clearly interrelated. The majority says, however, that no causal connection exists between the detention of a passenger and a search of a vehicle, not even a "but-for" relationship. Pondering the correctness of this premise one might muse that, after all, removing a passenger from a vehicle is not invariably or even usually followed by a search of the car. Moreover, the search here, at least as to the front seat area, did not depend on appellant's removal from the vehicle; presumably, Officer Lowe would have been able to discover some of the contraband even had appellant remained inside. Finally, the search did not in a strict sense hinge on appellant's detention at all, but might have proceeded while she was allowed to leave.[3] Under this analysis, only the detention of the driver would be relevant, for only he could have prevented the search had he been free to depart with his car.

In my view, however, it is not necessary to agonize over the distinction between a search with or without appellant in the vehicle, or with or without appellant at the scene. According to *Wong Sun,* supra, the issue is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made *has been come at by exploitation of that illegality* or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 371 U.S. 488, 83 S.Ct. 417 (emphasis added). The officers here certainly "exploited" the detention of appellant; indeed, the exploitation—the search—was part and parcel of the "primary illegality." Given that the detention occurred simultaneously with the search, and that the motivation for both was the same, it would be nothing short of casuistry to concede that appellant's legitimate expectation of privacy in her own person was violated, but nevertheless deny relief on the basis that only the driver's illegal detention "caused" the discovery of the evidence.[4]

---

**2.** While the constitutional right to travel might perhaps be implicated here, I am not aware of any decisions applying the exclusionary rule in that context. My decision hinges on the seizure of appellant and the relationship of that seizure to the search.

**3.** This argument assumes that "allowing" appellant to leave, *sans* car, would not itself entail a detention. Aside from the fact that the extremely hypothetical fact situation thus posed is not before us, I wonder if such a theory accords enough respect to individual liberty.

Constitutional rights should perhaps not be regarded as a kind of public dole, but neither should they be meted out grudgingly, like Oliver Twist's gruel.

**4.** As to causation, I also observe that in *Wong Sun,* when petitioner Toy was illegally arrested, he told officers where one "Johnny Yee" could be located. An illegal search of Yee's residence resulted in the discovery of narcotics, which were then admitted into evidence against Toy. *Id.* at 371 U.S. 474–75, 83 S.Ct. 410–11. It might have been said that Toy's illegal arrest, a

In sum, appellant's claim here is not a vicarious one: *her* rights were violated. That the police may have simultaneously injured the differing interest of another, the driver, is hardly a reason to deny appellant the opportunity to vindicate the wrong done to her. For in Texas, at least, I would not say that police officers are free to violate the rights of one person during the course of, and for the purpose of, violating the rights of another.[5] Accordingly, I would hold that appellant may challenge the admissibility of the physical evidence in this case.

Because the majority does not do so, I dissent.

TEAGUE, J., joins.

seizure of the person, only led to the discovery of Yee's identity and location, and that the federal agents, having free will, might have stopped to procure a warrant before searching Yee's house. Under this view, Toy's *seizure* would *not* have "caused" the *search* of Yee's house; the search could be deemed a separate, independent violation of a distinct fourth amendment interest of Yee's, not the "fruit" of Toy's arrest. Insistence on strict causation, therefore, would undermine the celebrated *Wong Sun* decision itself. *See and cf. Wong Sun* at 371 U.S. 487–88, 83 S.Ct. 417 (Government conceded that Toy *helped* them find the drugs; narcotics were "come at" by exploitation of Toy's illegal arrest). Indeed, if the agents in *Wong Sun* had had another way to determine Yee's identity and location, but had chosen to arrest and interrogate Toy as a short-cut, the situation would be analogous to our case, where appellant's detention was not a *sine qua non* for the search. The point, as a close reading of *Wong Sun* illustrates, is that the fruits doctrine does not demand strict logical inevitability.

5. I emphasize that not every constitutional violation will suffice to challenge another violation. An illegal arrest unrelated in time, place, or motive to an illegal search would not afford the arrestee the right to contest the search.