# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00662-CR

**Jonas Smith, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. D-1-DC-06-200839, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Jonas Smith for possession of at least one gram but less than four grams of cocaine. Finding the enhancement paragraph true,[1] the district court assessed sentence at ten years in prison. On appeal, Smith argues that the evidence is legally and factually insufficient to support his conviction. He also asserts that the prosecutor improperly urged the jury to convict him based on extraneous offenses. We affirm.

Austin Police Department Officer Leonardo Quintana testified that at 1:43 a.m. on February 16, 2006, he initiated the stop of a vehicle for lacking a front license plate. Despite Quintana's use of the lights and siren, the car did not stop immediately, but rolled up to an intersection and turned left. The vehicle continued while the police officer used his air horn and

---

[1] The enhancement paragraph alleged convictions for three felony offenses: retaliation, possession with intent to deliver cocaine, and possession of a controlled substance.

sirens, finally pulling into a driveway. Quintana testified that, while the car was rolling, he saw a lot of movement in the car, with both the driver and the passenger turning to look at him. Quintana testified that the passenger looked back about two or three times.

Quintana testified that the delay in stopping caused him to be more cautious when approaching the car. The passenger jumped out of the car and ran away despite Quintana's order to stop. Quintana then removed the driver, Smith, from the vehicle, and handcuffed him. Quintana testified that he saw marijuana seeds on the driver's seat and the front console and smelled marijuana in the car.

Quintana searched the car and found a black pouch in a cargo pocket on the driver's side door. It was within the driver's reach. The pouch contained a baggie full of crack cocaine. Smith was arrested and taken to jail. Quintana testified that, while walking into jail, Smith asked to speak with him privately. Quintana said he did not recall showing the contents of the pouch to Smith and that he normally would not show seized drugs to a suspect. Quintana testified that Smith said, "I know I am going to do some time, but if you weigh it for less than a gram, those people will work with me." Quintana testified that he believed this was an admission of ownership of the cocaine, so he did not dust the bag for fingerprints. He also testified that the pouch's canvas material was not a good source for fingerprints. Quintana said Smith told him that he smoked marijuana in the car, which belonged to his grandmother. Further investigation revealed that the car did not belong to Smith or his grandmother. On cross examination, Quintana testified that Smith had time after Quintana activated his lights to hand the black pouch to the passenger who fled.

2

Smith testified and acknowledged his criminal history—including drug possession and sales—but denied committing this offense. He said, "It wasn't my car. It wasn't my drugs." He testified that the car belonged to the man who fled. Smith said he was initially a passenger in the car, catching a ride from his girlfriend's house to his home with his grandmother. When they came upon police officers pulling cars over, the man said he did not have his driver's license and asked Smith to drive. Smith denied they smoked marijuana and said he did not see or smell marijuana. He said he was smoking a cigarette when he was stopped.

Smith said he did not stop when Quintana activated the police car's lights because he wanted to stop at his grandmother's house nearby. The driveway he pulled into was his grandmother's. Smith denied that he and the passenger moved around a lot and asserted that the windows of the car were tinted so dark that no one could have seen inside the car. Smith said his passenger never mentioned the cocaine in the car and surprised him by running away. Smith said he told Quintana he did not know why the man ran and did not know whose car it was. He also testified that he told Quintana the cocaine was not his.

Smith testified that, at booking, he asked to speak to Quintana privately. He reiterated that the drugs were not his and said he was looking for a way to avoid jail. He said Quintana had earlier told him that, if he named his passenger, he could avoid jail. At the jail, however, Quintana said that Smith would have to talk to a detective.

On cross examination, Smith denied dealing drugs after he was released from prison, but acknowledged that he had been arrested for possession. He nearly died because he tried to conceal a large amount of drugs by eating them. He later said, "When I do something, I plead guilty."

Smith contends that this evidence is legally and factually insufficient to support his conviction. Smith points to the lack of evidence that the car was his or that the cocaine was in his possession. He contrasts his behavior with that of his companion who fled. He contends that his statements to police after his arrest were likely based on surmise or knowledge acquired after the arrest, but did not show that he possessed the cocaine.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the evidence. *Id*. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

We must avoid substituting our judgment for that of the fact finder, and we should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State,* 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The jury is the sole judge of the weight and credibility of witness testimony. *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must reconcile any

4

evidentiary conflicts. *Id*. We determine the sufficiency of the evidence by viewing the cumulative effect of all of the evidence, not each fact in isolation. *Id*. at 297.

In a trial for possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. *Id*. Mere presence at the location where drugs are found is insufficient to establish actual care, custody, or control of those drugs. *Id*. However, presence or proximity, when combined with other evidence, either direct or circumstantial may well be sufficient to establish that element beyond a reasonable doubt. *Id*. The number of links is not dispositive, but rather the logical force of all of the evidence. *Id*.

Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the judgment in this case. The jury was entitled to accept Quintana's testimony over Smith's. There is evidence from which the jury could deduce that Smith delayed his encounter with the officer while much furtive motion occurred in the car—perhaps hiding drugs that were in plain view. The officer found cocaine in a bag on Smith's side of the car within his reach. Similar circumstances have been found to support convictions for possession of drugs. *See Lewis v. State,* 664 S.W.2d 345, 349 (Tex. Crim. App. 1984). Further, according to Quintana, although not shown the contents of the pouch, Smith asked Quintana to assign the drugs a lighter weight (less than one gram) to reduce the offense level so that a conviction would carry a lighter sentence—indicating knowledge of the contraband contents of the bag and its approximate weight. Although Smith denies

this version of events, we must give little effect to that denial when viewing the evidence in the light most favorable to the verdict. The passenger's flight is inconclusive as he may have fled for a range of reasons, such as to avoid sole guilt, to remove more contraband in aid of himself or Smith, or to avoid association with Smith's possession of drugs. The evidence is legally sufficient to support the conviction.

Although the case is closer when the evidence is viewed in a neutral light, the evidence is factually sufficient to support the conviction. Jurors were essentially faced with a credibility choice between Smith and Quintana. Smith made that clear when he contradicted Quintana's version of events and asserted that Quintana lied. Based on the record and the required deference to the fact finder's credibility choices, we find no basis on which we can overturn the jury's decision to credit Quintana's testimony. *See Jones,* 944 S.W.2d at 648; *Barnes,* 62 S.W.3d at 298. That done, we conclude that Smith's control of the car, participation in movement in the car while delaying the encounter with police, proximity to the drugs, and familiarity with the existence and quantity of drugs provide factually sufficient evidence to support his conviction for possession of cocaine.

Smith also complains that the State improperly urged the jury to convict him on the basis of extraneous offenses. He refers to two passages. First: "Did they bring in his family to say [Appellant] has changed? [Appellant] used to do all these things but he doesn't anymore." Second: "He gets caught, like he has been caught on other occasions. He gets caught again." He contends that these arguments were improper because they invited the jury to base its decision on his criminal history rather than on the facts of this case.

6

To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument. *Young v. State,* 137 S.W.3d 65, 69-70 (Tex. Crim. App. 2004). The usual sequence is objection, request for an instruction to disregard, and motion for mistrial, but each step is essential only if the trial court could have averted harm—preserved the impartiality of the jury—by granting the defendant's request. *Id.* If a trial court sustains an objection to improper jury argument, the complaining party must request an instruction to disregard to preserve error on appeal if an instruction to disregard could have cured the prejudice resulting from the argument. *McGinn v. State,* 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (citing *Sawyers v. State,* 724 S.W.2d 24, 38 (Tex. Crim. App. 1986)). The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been cured by such an instruction. *Id.* Improper argument concerning extraneous offenses can be cured by an instruction to disregard it. *Carpenter v. State,* 596 S.W.2d 115, 124 (Tex. Crim. App. 1980).

Smith did not preserve error with regard to either passage. Although the trial court sustained his objection to the first passage, Smith did not request an instruction to disregard this argument or request a mistrial. He did not object to the second passage, request an instruction to disregard it, or ask for a mistrial because of it. Because we believe an instruction to disregard could have cured any harm from the arguments Smith complains of, we conclude that Smith did not preserve these errors by requesting the proper relief. We also note that Smith diminished any harm from the prosecutor's references to his criminal history by voluntarily testifying and offering much commentary regarding his criminal past. By comparison to his testimony, the prosecutor's objected-to argument is insignificant.

We overrule both of Smith's points of error and affirm.

_____
G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 30, 2007

Do Not Publish