# NO. 12-23-00185-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***THE STATE OF TEXAS, APPELLANT*** | *§* | ***APPEAL FROM THE 241ST*** |
| *V.* | *§* | ***JUDICIAL DISTRICT COURT*** |
| ***JUSTIN HEATH PETTIT, APPELLEE*** | *§* | ***SMITH COUNTY, TEXAS*** |

***MEMORANDUM OPINION***

The State of Texas appeals the trial court's order granting Appellee Justin Heath Pettit's motion to suppress. In its sole issue, the State argues that the trial court abused its discretion in granting Appellee's motion. We reverse and remand.

### BACKGROUND

Appellee was charged with possession of a prohibited weapon. Prior to trial, Appellee filed a motion to suppress evidence seized during the search of a vehicle, in which he was a passenger, following a routine traffic stop.

The trial court conducted a hearing on Appellee's motion. At the hearing, Department of Public Safety (DPS) Trooper Ryan Wilkinson testified as the State's only witness. Wilkinson testified that on July 4, 2019, he conducted a traffic stop on a vehicle he observed speeding on Joy Wright Mountain Road in Smith County, Texas. By the time Wilkinson caught up with the car, it was turning left into a driveway of an abandoned house, and Wilkinson parked his patrol vehicle in the driveway behind it. The video footage from Wilkinson's body camera was admitted into evidence.

Wilkinson recalled that as he approached the vehicle, he noticed that the occupant of the passenger seat was shaking visibly and fidgeting with something. He identified Appellee in court as the passenger in the vehicle that day. He elaborated that when Appellee noticed him standing by the passenger-side door of the vehicle, his reaction was more than mere startlement but rather, he appeared to be afraid. Both the driver and Appellee were asked to exit the vehicle and complied. While Wilkinson spoke to Appellee and the driver, Bridgett Tobler, his partner, Trooper Louis Sullivan, requested from dispatch, record checks on the vehicle's license plate, as well as warrant information on Tobler and Appellee.

As Wilkinson spoke to Tobler, he learned that she did not know Appellee very well and, in fact, did not know his last name. She stated that she and Appellee were driving to a location in the area where he planned to fix a motorcycle. She was not certain of the address of their destination. Thereafter, Wilkinson spoke to Appellee and took note that Appellee continued to act nervously and appeared "very worried," which he considered to be unusual for a passenger in a typical traffic stop. Wilkinson testified that Appellee told him that he currently was on probation for unauthorized use of a motor vehicle. However, Wilkinson later discovered that Appellee failed to mention other parts of his criminal history for drug-related offenses.[1] Appellee denied that he used methamphetamine, cocaine, heroin, or PCP but stated that his girlfriend was a hard-drug user and that he smoked marijuana. According to Wilkinson, he began to suspect that Appellee's nervousness was the result of his knowledge that there was marijuana in the vehicle.

As a precaution, Wilkinson patted Appellee down, at which time Appellee volunteered that he had "tools" in his pocket. But Appellee refused Wilkinson's request to remove the tools from his pocket. Thereafter, Wilkinson learned from Sullivan that neither Tobler nor Appellee had outstanding warrants, at which point he returned to his patrol vehicle to check for local warrants and warrants for unpaid traffic tickets, which would not appear in the original search.[2]

Wilkinson again spoke to Tobler, who revealed that she had a "drug history." Wilkinson noted that she gave conflicting information about when she last used drugs, be it six months ago

---

[1] Wilkinson observed that Appellee had a "SS lightning bolt" tattoo on his neck. Wilkinson testified that, in his experience, such a tattoo can indicate membership in the Aryan Brotherhood prison gang, which is known to "deal in dope and guns."

[2] When the additional warrant check came back, Wilkinson did not initiate the process of completing a citation or warning related to the traffic stop.

or two years ago. She also revealed to Wilkinson that she was pregnant and, thereafter, smoked a cigarette. Wilkinson testified that, in his experience, Tobler's body showed signs typically seen in drug users, which are caused by the effect of drug use.

Based on his observations and the fact that it was a holiday during which DPS was out in full-force to keep the roads safe from drunk driving and drugs on a "dangerous weekend," Wilkinson asked Tobler for consent to search the vehicle. She refused, stating that her husband told her always to say "no." Shortly thereafter, approximately eleven minutes after initiating the traffic stop, Wilkinson called for a drug dog to be sent to the location. Approximately seventeen minutes into the encounter, Wilkinson received a call from the K-9 Trooper, from whom he learned that it would be forty-five minutes before he could arrive on the scene with his dog.

Forty minutes later, the drug dog arrived at the scene, was led around the vehicle to conduct a free-air search, and alerted on the driver's side of the vehicle. In the ensuing search of the vehicle, officers discovered syringes, prescription medication, a piece of cotton suspected to contain heroin,[3] and an illegal "sawed-off shotgun."

Following the presentation of Wilkinson's testimony and the argument of counsel, the trial court took the matter under advisement. Subsequently, the trial court signed an order granting Appellee's motion to suppress and, later, made written findings of fact and conclusions of law. This appeal followed.

**MOTION TO SUPPRESS**

In its sole issue, the State argues that the trial court abused its discretion in granting Appellee's motion to suppress.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor and review de novo the trial court's

---

[3] The substance on the piece of cotton was determined not, in fact, to be heroin.

application of the law to facts not based on an evaluation of credibility and demeanor. ***Neal v. State***, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. ***Maxwell v. State***, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. ***State v. Ross***, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. ***State v. Kurtz***, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. ***Id.***

**Standing of Vehicle's Passenger to Challenge Legality of Search**

At the outset, we must consider an issue not raised by either party in the trial court but raised by the State on appeal: whether Appellee has standing to assert a violation of his Fourth Amendment rights, i.e., whether Appellee's claim is based on a violation of his own Fourth Amendment rights, or instead, whether Appellee seeks vicariously to assert the rights of Tobler, who was the driver of the vehicle. *See* ***Lewis v. State***, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984); *see als*o ***Kothe v. State***, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004) (court may raise standing on own); ***Kennedy v. State***, No. 03-04-00101-CR, 2005 WL 1034114, at *3 (Tex. App.–Austin May 5, 2005, no pet.) (mem. op., not designated for publication). The application of legal principles to a specific set of facts is an issue of law and is subject to de novo review. ***Johnson v. State***, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

An essential element of Fourth Amendment claims is proof of a reasonable expectation of privacy. ***Kothe***, 152 S.W.3d at 59. Thus, "[a]ny defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded." ***Id.*** Significant to this case, "a passenger in a vehicle does not have a legitimate expectation of privacy" in the vehicle "where the passenger fails to assert a possessory interest in the vehicle or the property seized." ***Meeks v. State***, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985); ***Kennedy***, 2005 WL 1034114, at *3.

This does not mean, however, that such a passenger automatically lacks standing to challenge a vehicle's search under any circumstances; a passenger can challenge a vehicle's search "if the search resulted from an infringement (such as an illegal detention) of the passenger's Fourth Amendment rights." ***Lewis***, 664 S.W.2d at 347–48. In ***Lewis***, the police officer conducting the search requested that the appellant, a passenger of the vehicle, leave the

vehicle, and the officer detained her while the search was conducted. *Id.* at 347. At trial, the appellant asserted a Fourth Amendment claim, challenging both her removal from the vehicle and her continued detention after a certain point in time. *Id.* at 348. The court of criminal appeals stated that the "relevant question" as to whether the appellant had standing to assert a Fourth Amendment claim is whether the search of the vehicle "was come at by exploitation of appellant's continued detention and removal from the vehicle." *Id.* The court determined that the appellant's detention was irrelevant to the officer's decision to search. *Id.* at 349. The court elaborated, because the officer "could have let [the] appellant leave without hampering his ability to search the car[,]" in no way was her detention necessary to his performing the search. *Id.* at 349. Ultimately, the court concluded that the allegedly illegal search was not directly caused by exploiting the appellant's continued detention, and, thus, held that the appellant did not have standing to make a Fourth Amendment claim of an unreasonable search of the vehicle. *Id.*

Similarly, in the instant case, Appellee acknowledges that he did not have any possessory interest in the vehicle in which he was a passenger but, instead, argues that he had a "reasonable expectation of privacy in not being detained beyond the time necessary for law enforcement to complete their investigation." Appellee's standing to assert a Fourth Amendment claim is dependent upon the police illegally detaining him; the detention of Tobler and the vehicle is not relevant. *See id.* at 348; ***Kennedy***, 2005 WL 1034114, at *3. In accord with the court's determination in ***Lewis***, we conclude that the search of the vehicle in this case was not directly caused by exploiting Appellee's continued detention. *See **Lewis***, 664 S.W.2d at 348; ***Kennedy***, 2005 WL 1034114, at *3. Appellee was merely a passenger in the vehicle, and had he been allowed to leave, the DPS Troopers' ability to search the vehicle would not have been affected. *See **Kennedy***, 2005 WL 1034114, at *3. Therefore, we conclude that Appellee did not have standing to make a Fourth Amendment claim as to the search of the vehicle and that he, therefore, does not have standing to contest the admission of the evidence resulting from that search. *See **Lewis***, 664 S.W.2d at 348; ***Kennedy***, 2005 WL 1034114, at *3. Accordingly, we hold that the trial court abused its discretion in granting Appellees motion to suppress. The State's sole issue is sustained.

## DISPOSITION

Having sustained the State's sole issue, we *reverse* the trial court's order granting Appellee's motion to suppress and *remand* the cause for further consideration consistent with the opinion of this court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered February 7, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 7, 2024**

**NO. 12-23-00185-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**JUSTIN HEATH PETTIT,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1477-19)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*