Affirmed and Majority and Concurring Opinions filed December 21, 2006








Affirmed and Majority and Concurring Opinions filed December
21, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01125-CR

____________

 

ANDREW ZARCO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th District Court

Harris
County, Texas

Trial Court Cause No. 986,138

 



 

M A J O R
I T Y   O P I N I O N

 In this appeal from a jury=s guilty verdict of indecency with a
child, we are asked to find egregious harm from the trial court=s failure to give a reasonable doubt
instruction at the punishment phase of trial.  We also are asked to decide if
the State timely identified its outcry witness when the proper notice was given
only thirteen days before the jury was sworn but fourteen days before evidence
was first received.








We
conclude that appellant was not egregiously harmed by the lack of a reasonable
doubt instruction because the weight of the evidence weighed heavily in A.C.=s favor, appellant=s defense was weak and never directly
attacked A.C.=s claims, a correct instruction was given at the guilt phase, and the
State=s closing argument in the punishment
phase only briefly mentioned the evidence from the trial phase.  We also
conclude that the State gave untimely notice of its outcry witness, but the
noticeCone day shy of proper noticeCdid not harm appellant.  We therefore
affirm the jury=s finding of guilty to one incident of exposure to A.C., a
child younger than twelve. 

Factual and Procedural Background

A.C.,[1]
the complainant, lived with her father and his girlfriend, appellant=s mother.[2]  A.C.=s house had three
bedrooms: A.C.=s bedroom, the father=s bedroom, and a
third bedroom where appellant and his two brothers would sleep when there.[3] 
The three brothers rotated staying at the complainant=s house.

A.C. testified at trial that appellant sexually abused her
between the time she was in kindergarten and third grade.  She testified not
only to the charged act but to other similar bad acts appellant committed. 
A.C. was ten years old and in fourth grade when she testified.  Her testimony
regarding the charged offense and the extraneous offenses was clear, direct,
and unimpeached, and each of the offensesCcharged and
unchargedCwas described with the same degree of specificity, as
illustrated in more detail below.








A.C. did not speak of the abuse to an adult or an older
relative until she was in the third grade, during the 2003 Thanksgiving
holidays, when she received some startling news.  She was spending the holidays
with her grandmother, who learned that A.C.=s father was to be
deported to Mexico.  The grandmother told A.C., who was distressed by the
news.  A.C. told an older cousin, Ashley, that she did not want to return to
her father=s house if he was not there.  She told Ashley that
appellant would get into her bed, and that she was afraid to return to the
house.  

This reference to inappropriate behavior received a swift
reaction from her grandmother and other relatives, who scheduled appointments
with a female detective and with the Children=s Assessment Center
in Houston.  The information obtained in these meetings prompted the State to
file charges against appellant. He was indicted for one incident of exposing
his genitals to A.C., a child younger than twelve, on or before November 22,
2003.    

At trial, A.C. testified to all of the incidents of abuse
by telling the jury generally what would happen.  The prosecutor also had her
testify separately about the charged event, which occurred a month or so before
Thanksgiving of 2003, and about another time when she ran to the door of  her
father=s bedroom.  At the
close of the guilt/innocence phase, the jury received a reasonable doubt
instruction for the extraneous offenses.  It found appellant guilty as charged.


During the punishment phase, appellant presented two
witnesses; the State presented no evidence.  The charge instructed the jury
that the punishment was from two to ten years, which could be probated if the
jury desired, and the charge instructed the jury that it could recommend
community supervisionCi.e., probation.  The charge also reminded
the jury of the State=s burden of proof, but it did not inform
the jury that it could consider the extraneous offenses only if it found beyond
a reasonable doubt that appellant committed them.  Appellant did not object to
the charge=s failure to include this instruction.  At the close
of the evidence the jury found appellant guilty and assessed a three-year
sentence without probation and no fine. 

Appellant filed this appeal alleging that (1) the trial
court reversibly erred in not instructing the jury during the punishment phase
that it could not consider any extraneous bad acts without first finding them
true beyond a reasonable doubt; and (2) the State did not timely identify its
outcry witness.








Analysis

I.        Jury
Charge Error

In his first issue, appellant contends the trial court
committed errorCduring the punishment phase of the trialCwhen it failed to,
sua sponte, give the jury a reasonable doubt instruction on extraneous
offenses.[4] 
As we explain below, we agree; however, we do not find that the error was
harmful.  

A.      The Trial
Court Erred

At the punishment phase, the State may introduce evidence
of Aan extraneous
crime or bad act that is shown beyond a reasonable doubt.@  Tex. Code Crim. Proc. art. 37.07, ' 3(a)(1).  This
standard of proof is law applicable to the case.  Huizar v. State, 12
S.W.3d 479, 484 (Tex. Crim. App. 2000).  A defendant is entitled to have the
jury receive a reasonable doubt instruction regarding extraneous offenses
without request.  Id.  It is error if the trial court fails to instruct
the jury sua sponte.  See id.  A defendant need not object at
trial to preserve error.  Id.  However, the failure to object increases
appellant=s burden on appeal, imposing a higher hurdle appellant
must overcomeCnamely egregious harmCbefore we can
reverse.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).








Here, the State referred to the evidence adduced at the
guilt/innocence phase, which included both the  indicted offense and the
extraneous offenses.  The State contends all of these instances comprised one
transaction or occurrence and so did not require a reasonable doubt
instruction.  Appellant argues they are extraneous bad acts requiring an
instruction that the jury could not consider them in assessing punishment
unless it was convinced beyond a reasonable doubt the events did occur and were
attributable to appellant.  We agree with appellant that the indicted offense
and the extraneous offenses were separate occurrences. 

1.       Not
same-transaction contextual evidence.

The State=s primary claim is that the multiple
instances of alleged abuse comprise one larger criminal act.  ACircumstances of
the offense . . . tend[ing] to prove the allegations of the indictment are not
extraneous offenses.@  Camacho v. State, 864 S.W.2d 524,
532 (Tex. Crim. App. 1993) (citing Ramirez v. State, 815 S.W.2d 636, 643
(Tex. Crim. App. 1991)).  However, an extraneous offense is Aany act of
misconduct, whether resulting in prosecution or not, that is not shown in the
charging papers.@  Rankin v. State, 953 S.W.2d 740,
741 (Tex. Crim. App. 1996) (citing cases).  The Court of Criminal Appeals
recently reaffirmed that multiple instances of abuse occurring over several
years are separate offenses.  See Phillips v. State, 193 S.W.3d 904, 910B11 (Tex. Crim.
App. 2006).   Same-transaction contextual evidence, on the other hand, is
extraneous offense evidence that is indivisibly connected to the charged
offense.  Hatton v. State, No. 14‑98‑00542‑CR, 2000 WL
350539, at *1 (Tex. App.CHouston [14th Dist.] April 6, 2000, no
pet.) (not designated for publication).  If the State offers same-transaction
contextual evidence for a purpose other than showing the defendant=s character, then
a reasonable doubt instruction is not required.  See Searcy v. State, 
No. 14‑03‑00402‑CR, 2004 WL 1315448, at *4 (Tex. App.CHouston [14th
Dist.] June 15, 2004, no pet.) (not designated for publication) (citing
cases).  Otherwise, as we have explained, the instruction is mandatory. 








Here, the State presented evidence of multiple instances of
abuse.  The alleged abuse occurred over a period of years and involved, on
occasion, the appellant removing his clothes, removing complainant=s clothes, and
moving his  genitals both over and under her clothing.  The State fails to
explain how these other instances show the surrounding circumstances of the
indicted offense, which was one count of indecency with a child by exposure of
genitals that occurred on or about November 22, 2003.   While the State may
prove a crime that occurs anterior to the Aon or about@ date listed in
the indictment to obtain a guilty verdict, for purposes of suggesting
punishment, it must rely on the crime contained in the indictment.[5]


2.       The
State referred to the evidence in the punishment phase.

Alternatively, the State argues no instruction was
necessary even if the other alleged offenses were extraneous offenses and were
not same-transaction contextual evidence.  The State=s position is that
it did not specifically use or refer to that evidence at punishment, and it
also told the jury there were no extraneous offenses to consider.

It is true that the State introduced no new evidence during
the punishment phase.  Also, it did not request any specific punishment for
appellant.  The assistant district attorney spent the majority of his closing
argument discussing the jury charge, explaining that the State would respect
any punishment assessed, and made little reference to the evidence before the
jury.  But he did tell the jury it could consider what appellant had done to
A.C. and how often the abuse happened. 








The State contends an extraneous offense instruction was
unnecessary because the State informed the jury there were no prior convictions
or felony cases to consider.  This argument is correct insofar as it states
that no extraneous offense instruction is needed for a prior adjudicated
offense, because another jury has already found beyond a reasonable doubt that
the crime was committed.  But, the argument is incorrect because it assumes
that unadjudicated offenses do not require a reasonable doubt instruction.  See
Bluitt v. State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) (stating that
while prior convictions need not be re-proven beyond a reasonable doubt, the
plain language of the statute requires proof beyond a reasonable doubt for
extraneous bad acts).  That
argument is contrary to article 37.07, section 3(a)(1), and the case law
interpreting it.  See Tex. Code
Crim. Proc. art. 37.07, ' 3(a)(1).[6]

The
purpose of the instruction is to prevent the jury, when it is determining
punishment, from considering any extraneous offense unless it first has decided
beyond a reasonable doubt that the defendant has committed the offense.  See
id.  Under the relevant article, article 37.07, section 3(a)(1) of the
Texas Code of Criminal Procedure, an extraneous offense includes crimes other
than the charged crime and other bad acts.  See id.   

In the trial below, the non-charged offenses presented by
the State constitute Aextraneous offenses@ requiring the
article 37.07 instruction.  In fact, the presence of extraneous offenses
required an article 37.07 instruction regardless of whether or not the State
referred to them in closing.   In short, the trial court erred.

B.      Egregious
Harm

Deciding if error occurred, however, is only part of our
inquiry.  Once we find error, we must determine if the error harmed appellant. 
Because appellant=s counsel did not object at trial to the
instruction=s omission, we will not reverse unless the error
amounted to  egregious harm.  See Almanza, 686 S.W.2d at 171 (Tex. Crim.
App. 1984); see also Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim.
App. 1991) (holding that omission of an unrequested jury instruction Aapplicable to the
case@ requires reversal
only when the harm was egregious).








Egregious harm exists when the defendant=s rights are
injured to the point that he was denied a fair and impartial trial, when the
error (1) went to the very basis of the case, (2) denied the defendant a
valuable right, or (3) vitally affected his defensive theory.  Almanza,
686 S.W.2d at 172.  In Almanza, the court held that the degree of harm
must be assayed Ain light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Id. at
171.  Regarding how a reviewing court should conduct a review for egregious
harm, the Almanza court referred to an 1890 opinion by the Texas Court
of Appeals, saying that it could not improve on that court=s explanation.  Id.
at 173.  

But in determining whether the
error is material . . . we are to look to the whole record bearing upon the
subject.  What was the nature of the testimony supporting the verdict?  Was it
cogent and overwhelming?  What was the character of the testimony presenting
the phase or theory of the case omitted to be noticed in the charge, and upon
which omission error is assigned?  Was it at all reasonable?  Did it present a
theory which a reasonable mind could entertain, or was it supported by such
testimony as was remotely calculated to destroy the State=s case when
considered in connection with the other testimony in the case , as well as the
charge as a whole?  Was the phase of the case simply an addition to the case as
made by the State and consistent therewith, or was it in direct conflict with
the State=s theory?  These are all important matters to be
considered in passing upon the [degree of harm] in the omission or error. 

Id. at 173-74
(citing Davis v. State, 28 Tex. Ct. App. 542, 13 S.W. 994, 995 (1890)). 
Egregious harm is the highest standard of harm an appellant must meet in part
because it involves error raised for the first time on appeal.  Almanza,
686 S.W.2d at 172B74.  We must determine the impact of the
error on a case-by-base basis.  See Hutch v. State, 922 S.W.2d 166, 171
(Tex. Crim. App. 1996).     








C.      Application
of Egregious Harm Standard

Although Davis involved the trial court=s failure to
instruct the jury on a lesser included offenseCa different
inquiry than oursCit is nonetheless instructive.  In light
of the directions given by Almanza, Davis, and the other opinions
we have mentioned, we will review generally the state of the evidence at both
guilt/innocence and punishment phases of trial, closing argument at both phases
and the degree to which the error may or may not have been emphasized at the
punishment phase, the charges at both phases of trial, and the punishment
assessed.  See Davis, 13 S.W. at 995; Almanza, 686 S.W.2d at 173B74; see also
Hutch, 922 S.W.2d at 171.  We turn now to that analysis.

1.       Examining
the record.

a.       The trial
testimony at guilt/innocence strongly supported A/C=s claims. 

The
State presented seven witnesses,[7] including
A.C., who had some knowledge of the abuse and were able to tell the jury their
impressions. 

i)        A.C.=s testimony about
the event was clear, strong, direct, and unimpeached.

A.C. was
ten and in the fourth grade at trial.  She testified about the charged offenseCthe pre-Thanksgiving eventCas well as the extraneous offenses. 
Her testimony regarding each was remarkably similar.  In each case she said
appellant would enter her room while she slept and wake her as he was getting
into her bed.  In one instance he was naked when he got under her covers,
spurring her to run to the door of her father=s bedroom.  In another, the last time
the abuse occurred, he kept on his boxer shorts when he got into the bed, but
when he put his hands down her pants and refused to stop, she got out of bed
and lay on the floor.  In what she described as the typical offense, he would
unsuccessfully try to put his Aprivate part@ into her Aprivate part.@








A.C.
told the jury appellant had abused her Aa lot@ of times between kindergarten and
the third grade.

A.C.=s testimony in support of the charged
offense and the extraneous offenses was equally strong, equally direct, and
equally consistent and almost identical up to the point of describing the
specific event.  Her testimony regarding these events stood unimpeached. 

ii)        The adult
testimony in support of A.C. was clear, strong, direct, and unimpeached.

To
complete the story of how the abuse came to light and resulted in the
indictment, the State presented the testimony of the following individuals: (1)
three relatives who testified about A.C.=s initial revelationCduring the Thanksgiving holidaysCthat appellant had abused her; (2)
the outcry witness, a female police officer with the Jacinto Police Department,
experienced in interviewing abused children; and (3) an expert from the
Children=s Assessment Center, who interviewed
A.C. about the allegations. 

These
witnesses each presented clear, direct and unimpeached testimony regarding A.C.=s revelations to them.  They
presented a picture of A.C.=s actions toward them that was perfectly consistent with all
of A.C.=s claims.  The timing of A.C.=s revelation was consistent with her
claims.  The way in which she actedCemotional and afraidCwas consistent with her claims.  The
level of detail and consistency of her answers to their questions was
consistent with her claims.  








In
addition, one of the State=s witnesses, Detective Silva, who was also the outcry
witness, presented a negative view of appellant, who made incriminating and
suspect statements when confronted with the allegations against him.  Detective
Silva said appellant was cocky and very defensive during his interview.  His
first comment to her, after she had told him of the accusations against him was
AYou=re not going to pin this on me.@  They then discussed the
circumstances at the house.  Appellant said A.C., who was between six and
eight, would wear skimpy clothes and dance in front of him.  He said Ashe tries to be sexy.@  He also said AHe couldn=t help it,@ but the record was a little unclear
exactly what he meant by this comment.  He also acknowledged that sometimes he
would sleep in her bed.  At the time of this interview, appellant was
seventeen.  

iii)      The
defense testimony did not directly relate to the allegations or specifically
dispute them in any way.

Appellant
did not testify at trial.  None of the defense witnesses had any knowledge
whether the abuse did or did not occur, nor did they contradict A.C.=s allegations.  Their purpose was to
attack side issues.  Specifically, they were meant to cast a doubt on some of
Detective Silva=s negative testimony regarding appellant=s behavior upon learning of the
allegationsCnone of which related to his incriminating statements made when Detective
Silva interviewed him at the stationCand to confirm that A.C. Atr[ied] to be sexy@ at times. 

                                    b.       Closing
argument at guilt/innocence was uneventful and the charge properly limited the
jury=s consideration of the extraneous
offenses.

In its
closing argument, the State did not urge a guilty finding by relying on
histrionics or hyperbole.  The transcription of the closing argument reflects a
measured, reasonable argument based on the facts of the case.  The charge
properly instructed the jurors not to consider the extraneous offenses unless
they were convinced beyond a reasonable doubt that they occurred.

c.       At the
punishment phase only the defense presented evidence, which was  designed to
encourage the jury to consider probation.

At the
punishment phase the State presented no testimony.  The defense presented two
witnesses: appellant=s mother and a former employer/friend.  Both said appellant
was a nice young man and that, if he was given probation, they would help him
successfully complete his term.








d.       The
punishment phase arguments were uneventful.

As with
the guilt/innocence phase closing arguments, the punishment phase arguments
also were measured.  The defense attorney primarily spoke to the jury about
probation.  He urged the jurors to give appellant probation and told them the
judge would maintain close supervision to ensure that he honored the terms of
probation.  

The
State first thanked the jurors for their verdict and for being willing to
believe A.C., even though no one witnessed the abuse.  The State told the jury
it was responsible for deciding the best punishment for appellant, and that in
making its decision the jury could look to the facts and consider how many times
the abuse occurred and what was done.  These comments, which took up seven
lines out of the 107 lines of argument to the jury, came near the beginning of
closing.  The remainder of closing was spent on the charge, the possibility of
probation, and explaining a potentially confusing part of the charge relating
to probation.

e.       The
charge failed to contain a reasonable doubt instruction.

Though
the guilt/innocence phase charge contained an appropriate instruction limiting
the jury=s consideration of the extraneous
offenses, the punishment phase charge did not.  The jury was not told it could
consider the extraneous offense evidence unless it found beyond a reasonable
doubt that appellant committed the acts.  Appellant did not object to the
charge=s failure to contain the instruction.

2.       Analysis
for Harm

After having reviewed the trial, we consider whether it
caused appellant egregious harm.  We are of the opinion that appellant was not
egregiously harmed by the absence of the reasonable doubt instruction.  Even
without the instruction, appellant received a fair and impartial trial. We have
already detailed the trial proceedings, but we highlight those parts of the
proceedings that we rely on for our decision.








First,
the character of A.C.=s testimony regarding the extraneous offenses was no
different from the testimony the jury believed when it found appellant guilty. 
See Davis, 13 S.W. at 995 (exhorting the reviewing court to
consider the character of the testimony to which the omitted charge language
applied).  All of the testimony was reasonable and it was of such a character
that a reasonable mind could believe it beyond a reasonable doubt, not only if
looking solely at A.C.=s testimony, but also if considering her testimony in
conjunction with the supporting adult testimony.  See id.
(instructing the appellate reviewer to ask if the character of the testimony
presented a theory which a reasonable mind could entertain).  In addition, as
we noted earlier, the circumstances under which A.C. first revealed the abuseCin reaction to startling news that
she would have no protector at her homeCare consistent with the way in which
abused children often reveal their abuse.  Detective Silva, who certainly
appeared to believe A.C., described to the jury two types of abuseCthe charged abuse and the most
serious type of abuseCconfirming that they occurred more than once from
kindergarten to the third grade.  And, the expert from the Children=s Assessment Center detected no signs
of fabrication.  In short, A.C.=s testimony as to the extraneous offenses was of the same
character and strength as her testimony on the charged offense and both stood
uncontradicted.

Second,
the contested issues in the case were all side issues that did not directly
impugn the veracity of A.C.=s allegations.  These side issues dealt with (1) a diary in
which A.C. had written a comment about having had sex, and whether she wrote it
voluntarily or whether an older friend made her write it, (2) whether her
father always kept his bedroom door open at night or only sometimes, (3)
whether certain detailsCunrelated to the abuseCof Detective Silva=s testimony were accurate, such as
whether appellant did or did not immediately go to the police station to talk
with Detective Silva.  Each of the witnesses who testified regarding these side
issues was either related to appellant or dating one of appellant=s relatives.  Even if the jury
believed these witnesses, a reasonable juror still could have believed A.C.=s allegations beyond a reasonable
doubt.








Third,
although the State focused on the charged and extraneous offenses at the
guilt/innocence phase, the jury was properly charged.  Thus, if the jury
considered these offenses in the guilt/innocence phase, it did so only after
finding beyond a reasonable doubt that appellant committed them.  At the
punishment phase, the State did not introduce any testimony and otherwise did
not emphasize the extraneous offense evidence, although it did mention it in
closing.

Fourth,
the punishment the jury assessed was at the low end of the punishment range. 
The jury could have chosen as little as two or as much as ten years, could have
probated the punishment, and could have imposed a fine.  Instead, it assessed a
three-year punishment with no fine.  Even if the jury had considered only the
charged event, a three year sentence certainly was reasonable and not unfair,
especially considering the complainant=s tender age. 

For all
of these reasons, we conclude that appellant received a fair trial and that he
was not egregiously harmed by the charge error.  We overrule his first point of
error.[8] 

II.       Outcry
Statute

In his second issue, appellant argues there was no showing
that outcry testimony from Detective Silva was properly admitted under the
statutory exception to hearsay.[9] 
Tex. Code Crim. Proc. art.
38.072.  At trial, appellant specifically argued that Detective Silva was not
the proper outcry witness.  The State contends that any other arguments
relating to the State=s compliance with the outcry statute are
waived.  As we explain below, we disagree.  Also, as we further explain, there
is no harm in any event.








A.      Preservation
of Error

At trial, appellant lodged the following objection to the
State=s outcry witness:

[Defense]:    Your
Honor, I=m going to object
at this time.  This would be hearsay.  And if not, in my opinion, I would also
object to the report with the outcry exception as the outcry had been
previously made to an adult.

The
trial court then called the attorneys to the bench and ruled on the objection:

The Court:    Approach the bench.  

(Bench conference)

The Court:    I don=t think the specifics of the outcry
ha[ve] come out because it wasn=t admissible.  The first witness was a 17-year-old, and the law doesn=t allow her to discuss the
specifics of the discussion or outcry because of her age.  It=s hearsay as to that witness. This
is the first adult witness that=s just spoken concerning the allegations.

[The State]:  And
the aunt, the grandmother, and the grandmother=s daughter all
testified that they did not question the child in details or specifics.

The Court:    The
objection=s noted

(Proceedings
continued)

The Court:    Overruled.

On
appeal, appellant alleges the State did not comply with the outcry statute and
so Detective Silva should not have testified.  However, at trial, appellant
clearly objected to hearsay and then more specifically objected that Detective
Silva was not the first adult to whom the outcry was made.  We must determine
if appellant=s objection properly preserved any argument other than
to challenge whether Detective Silva was the first adult to receive the
outcry.  








1.       Long
and later cases.

In Long v. State, the Court of Criminal Appeals
stated that a general hearsay objection shifted the burden to the State to
prove an outcry statement was admissible pursuant to article 38.072 or some
other hearsay exception.  800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (per
curiam).  To admit hearsay pursuant to article 38.072, the State must comply
with the statute=s mandatory requirements, such as notice. 
Id. at 547.  It is the State=s burden to
satisfy each element of the statute.  Id. at 548.  A general hearsay
objection, the Long court stated, is enough to preserve all appellate
claims under the statute.  Id.  That court specifically declined to
follow cases such as Lewis v. State, 664 S.W.2d 345, 349 (Tex. Crim.
App. 1984), which held a general objection does not preserve error for review. 
Long, 800 S.W.2d at 548.  Although this case is directly on point and
controls, courts are inconsistent in their recognition of its holding.








Since Long, many courts of appealsCincluding this oneChave addressed
whether a general hearsay objection will waive a complaint for failure to
comply with specific portions of the outcry statute.  See Zigakol v. State,
Nos. 14‑04‑01168‑CR, 14‑04‑01169‑CR, 2005
WL 3005683, at *2 (Tex. App.CHouston [14th Dist.] Nov. 10, 2005, no
pet.) (not designated for publication) (holding that appellant waived error for
failure to receive notice by failing to raise that issue in the trial court); Garcia
v. State, Nos. 14‑04‑00676‑CR, 14‑04‑00677‑CR,
2005 WL 2429795, at *3 (Tex. App.CHouston [14th
Dist.] Aug. 25, 2005, pet. ref=d) (stating error in failing to
hold hearing waived when not raised below; citing Lewis, 664 S.W.2d at
349);  Garza v. State, No. 04‑03‑00606‑CR, 2005 WL
1334375, at *1 (Tex. App.CSan Antonio June 8, 2005, no pet.) (not
designated for publication) (noting there is a split among the courts of
appeals as to whether or not a general objection will preserve review for lack
of notice, with only the Waco Court of Appeals agreeing that it will preserve
review; the San Antonio Court of Appeals declined to answer the question for
itself and ruled on different grounds); Cates v. State, 72 S.W.3d 681,
698 (Tex. App.CTyler 2001, pet. ref=d) (determining
appellant waived error for lack of hearing by not raising that specific
objection at trial); Skidmore v. State, 838 S.W.2d 748, 753 (Tex. App.CTexarkana 1992,
pet. ref=d) (holding
appellant could not raise lack of notice on appeal because he did not object on
that ground at trial); Cantu v. State, 830 S.W.2d 166, 170 (Tex. App.CDallas 1992, no
pet.) (refusing to consider ground of error because it differed from objection
raised at trial); but cf. Hayden v. State, 928 S.W.2d 229, 231 (Tex.
App.CHouston [14th
Dist.] 1996, pet. ref=d) (acknowledging Long and the
burden it places on the State to satisfy the outcry statute and ultimately
overruling the point of error); Garcia v. State, 907 S.W.2d 635, 637
(Tex. App.CCorpus Christi 1995), aff=d on other grounds, Garcia v.
State, 981 S.W.2d 683 (Tex. Crim. App. 1998) (citing Long and
stating point of error waived on appeal where there was a motion to suppress
outcry statement, but no objection at trial); contra Laredo v. State,
194 S.W.3d 637, 640B41 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (acknowledging Long, but
determining that it did not apply because appellant had not raised a hearsay
objection to the outcry testimony); Melchor v. State, 01-05-00630-CR,
01-05-00631-CR, 2006 WL 948056, at *2 (Tex. App.CHouston [1st
Dist.] April 13, 2006, no pet.) (not designated for publication) (following Long
and stating that general hearsay objection will preserve review on article
38.072 issue); Barnes v. State, 165 S.W.3d 75, 81B82 (Tex. App.CAustin, no pet.)
(following Long and stating trial court erred when it did not hold
article 38.072 hearing and then admitting the outcry testimony when appellant
raised a general hearsay objection); Gabriel v. State, 973 S.W.2d 715,
719 (Tex. App.CWaco 1998, no pet.) (citing Long and holding
argument regarding notice preserved by hearsay objection even though counsel at
trial made arguments only about lack of reliability).  Since Long, the
Court of Criminal Appeals has reaffirmed that the State bears the burden of
proving an exception for any hearsay it attempts to use at trial.  Cofield
v. State, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) (citing Long). 
However, we know of no case for which it has granted discretionary review and
reaffirmed that a general hearsay objection will preserve review for any
claimed error under the outcry statute.  Indeed, it has refused discretionary
review for cases in direct conflict with Long.  See supra.    








Despite this mixed history, we will follow the Court of
Criminal Appeals= binding precedent, and this court=s recent precedent
in Laredo.  Thus, appellant preserved review on the issue of whether the
State complied with the outcry statute.  

B.      Analysis
of the State=s Compliance with the Outcry
Statute

Article
38.072, section 2 has five requirements before an outcry statement is
admissible.  That statute states in relevant part:

Sec. 2. (a)
This article applies only to statements that describe the alleged offense that:

(1) were
made by the child against whom the offense was allegedly committed; and

(2) were
made to the first person, 18 years of age or older, other than the defendant,
to whom the child made a statement about the offense.

(b) A
statement that meets the requirements of Subsection (a) of this article is not
inadmissible because of the hearsay rule if:

(1) on or
before the 14th day before the date the proceeding begins, the party intending
to offer the statement:

(A)
notifies the adverse party of its intention to do so;

(B)
provides the adverse party with the name of the witness through whom it intends
to offer the statement; and

(C)
provides the adverse party with a written summary of the statement;

(2) the
trial court finds, in a hearing conducted outside the presence of the jury,
that the statement is reliable based on the time, content, and circumstances of
the statement; and

(3) the child testifies or is available to testify at
the proceeding in court or in any other manner provided by law.

Tex.
Code Crim. Proc. art.
38.072.  At trial, appellant specifically attacked only the requirement that
the person testifying be Athe first person, 18 years of age or older, other than the
defendant, to whom the child made a statement about the offense.@  Tex.
Code Crim. Proc. art. 38.072, ' 2(a)(2).  We will address this
specific objection first, and then address the other aspects of the outcry
statute.








1.       Detective
Silva was the proper outcry witness.

To be designated as the proper outcry witness, the witness
must be Athe first person,
18 years of age or older, other than the defendant, to whom the child made a
statement about the offense.@  Tex.
Code Crim. Proc. art. 38.072, ' 2(a)(2).  The
trial court has broad discretion in determining who is the proper outcry
witness.  Chapman v. State, 150 S.W.3d 809, 813 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (citing cases).  Absent a clear abuse
of discretion, we will not disturb the trial court=s ruling.  Id. 
A trial court abuses its discretion if its ruling is outside the zone of
reasonable disagreement.  Id. (citing cases).  The trial court did not
abuse its discretion; Detective Silva met each requirement of the statute.

The State presented testimony from A.C.=s cousin,
grandmother, great aunt, and Detective Silva.  A.C. first told her cousin about
the abuse.  The extent to which she gave details is unclear.  However, the
trial court correctly noted that A.C.=s cousin was not
18 years old at the time A.C. made the statements.  Thus, the cousin could not
be the proper outcry witness.  The grandmother and the great aunt both
testified that they did not question A.C. about the abuse.  All they knew was
that something in the nature of abuse was occurring, but no details.  That is
not enough to qualify them as the proper outcry witness.  Garcia v. State,
792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (interpreting article 38.072 as
requiring more than a statement giving a general allusion that something in the
area of child abuse is occurring).  Rather, A.C. would have had to give them
details so as to describe the offense in some discernible manner.  Id. 
The testimony at trial stated in clear terms that she did not give those
details, and her relatives did not ask for them.  The testimony also indicates
Detective Silva was the first person, 18 years or older, other than Andrew
Zarco, to whom A.C. made a detailed statement about the offense.  The trial
court did not abuse its discretion when it found Detective Silva was the proper
outcry witness.  








2.       Other
provisions of the statute.

a.       Two
provisions not seriously in dispute.

Two aspects of the statute are not seriously in dispute, if
at all.  First, that A.C. made the statement at issue, and that she testified
at the proceeding.  See Tex. Code
Crim. Proc. art. 38.072, ' 2(a)(2), (b)(3). 
However, two provisions are potentially in dispute: hearing and notice
requirements.  We address those in turn.

b.       The trial
court conducted a hearing outside presence of jury.

A trial court is required to conduct a hearing outside the
presence of the jury to determine that the outcry statement is reliable based
on the time, content, and circumstances of the statement.  Id. art. 38.072, ' 2(b)(2).  Below,
the trial court  conducted a hearing at the bench following appellant=s objection.  This
bench conference was acceptable to fulfill the requirements of the statute.  See
Denton v. State, No. 02-05-00044-CR, 2006 WL 2076534, at *8 (Tex. App.CFort Worth, July
27, 2006, no pet.) (not designated for publication) (determining that article
38.072 hearing requirements were satisfied when trial court held a bench
conference, although no witnesses were called to testify); cf. Haley v.
State, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (holding that a bench
conference is a hearing conducted outside the presence of the jury for purposes
of obtaining a running objection pursuant to Texas Rule of Evidence 103(a)). 
Therefore, the trial court held the required hearing.  By overruling the
objection, it impliedly found the testimony reliable.  See Gabriel, 973
S.W.2d at 718.  We must now turn to the issue of whether the State provided
adequate notice.

c.       What is
the meaning of Aproceeding@?








To
comply with the notice provisions of article 38.072, the State must do four
things.  First, it must provide the notice fourteen days before trial.  Second,
the notice must inform the adverse party of the intent to use the child=s outcry statement.  Third, the
notice must provide the adverse party the name of the witness who will testify
regarding the statement.  Fourth, the notice must include a written summary of
the statement.  If the State fails to comply with any of the above
requirements, then the notice is deficient.  Here, the State failed to provide
adequate notice.

The
State notified appellant and his trial counsel that it would be introducing
evidence through an outcry statement.  That notice was adequate, as it was
given at least fourteen days before trial, informed appellant the State would
introduce outcry testimony, gave a description of the testimony, and identified
a witness.  However, thirteen days before the jury was sworn, but fourteen days
before evidence was first received, the State changed its notice and corrected
the identity of the outcry witness.  Originally, the State had listed Aimee
McAndrews as the outcry witness.  The updated notice correctly listed Detective
Silva as the outcry witness.

Both
notices gave substantially the same information, though worded differently. 
Both sufficiently informed appellant of what testimony would be offered.  Yet,
there is a clear problem.  The first notice was deficient to notify who the
correct outcry witness would be.  Therefore, the second, updated notice needed
to comply with the statute=s requirements on its own.  Because the State did not give
the amended notice until thirteen days before the jury was sworn, but fourteen
days before opening arguments and evidence were offered, we must determine the
meaning of the word Aproceeding@ under the outcry statute.  

The
State contends that proceeding refers to when evidence is admitted, because
article 38.072 is an evidentiary statute.  We disagree.  In our view, the more
logical interpretationCand one that is most consistent with case law and
interpretations of other portions of the Code of Criminal ProcedureCis to construe proceeding as
referring, at minimum, to the start of the trial, which begins when the jury is
sworn.  








In Tigner
v. State, the Court of Criminal Appeals was faced with a similar question. 
See 928 S.W.2d 540, 543B46 (Tex. Crim. App. 1996) (answering the question of whether Aproceeding@ in article 38.22 sec. 3(5)(a)
included voir dire).  The statute at issue in Tigner required the State
to provide a copy of an electronically recorded oral statement to defense
counsel at least 20 days before Athe proceeding.@  Id. at 543.  The majority
opinion held that proceeding at least encompassed voir dire.  Id. at
546.  Judge White concurred in the result without separate opinion.  Id.
at 549.  The dissenting judges concluded that proceeding referred to the
beginning of the criminal proceeding, and thus to the point at which the jury
was empaneled.  Id. at 549 (McCormick, J. dissenting). 

We
believe that Tigner, while not expressly interpreting the outcry
statute, provides guidance.  All nine judges of the Court of Criminal Appeals
concluded that the Aproceeding@ had begun at least at the time the jury was empaneled and
jeopardy attached.  Id. at 546 (majority opinion holding that Aproceeding@ begins at least at voir dire, and
thus encompassing jury empanelment);  id. at 549 (White, J. concurring
in result);  id. (McCormick, J.  dissenting) (arguing that the
proceeding began at jury empanelment, and did not begin as early as voir
dire).  Therefore, we hold that for purposes of the outcry statute, the
proceeding below began, at minimum, when the jury was empaneled and jeopardy
attached.[10]

Having
determined that the word Aproceeding@ refers at least to the date on which the jury is sworn and
empaneled, we must hold also that the State failed to comply with the notice
provisions of the statute.  Although the State had provided adequate notice of
its intent to use an outcry statement through Aimee McAndrews more than
fourteen days before the proceeding began, that notice was deficient by
identifying the wrong outcry witness.  The State properly modified the notice
to indicate the correct outcry witness; however, that notice was deficient
because it was given only thirteen days before the jury was empaneled. 
Therefore, we must determine whether or not that deficiency was harmful so as
to require reversal.  








3.       No harm.

If the State fails to comply with the notice requirements,
we will not reverse unless that failure caused harm.  Article 38.072's notice
requirement is to prevent surprise at trial due to the outcry testimony.  Gabriel,
973 S.W.2d at 719.  In our harm analysis, we determine if the failure caused
appellant to be actually surprised by the outcry evidence and whether the
failure prejudiced appellant.  See id. at 720.  Here, neither actual
surprise nor prejudice was present.

Appellant could not reasonably argue actual surprise to the
outcry evidence.  First, he received notice more than fourteen days before
proceedings began informing him what the testimony would be.  That was not
changed in any meaningful way.  Second, appellant failed to make any argument,
either in a post-trial motion or to this court, of actual surprise.  In
actuality, appellant did receive sufficient notice of the statement itself;
only the identity of the witness information was tardy.  

Concerning prejudice, appellant has likewise failed to
adduce any argument that he was prejudiced.  While it is possible that a
particular outcry witness could be subject to impeachment, there is nothing in
the record to indicate that appellant would have impeached Detective Silva and
appellant does not contend he could have impeached Detective Silva. 
Furthermore, the change from Aimee McAndrews to Detective Silva did not
prejudice appellant because both would have been viewed by the jury as experts:
Aimee McAndrews worked for the Children=s Assessment
Center, while Detective Silva is a police officer.  Without some argument or
indication that appellant was prejudiced by the State=s failure to
provide him fourteen days= notice of the proper witness, we cannot
conclude he was harmed.  We, therefore, hold that defendant suffered no harm
from the deficient notice.








Even if appellant could show surprise and prejudice by the
admission of Detective Silva=s testimony, there is an ultimate hurdle
he cannot overcome: when a court admits evidence over an objection, even if
error, it is not reversible when the same evidence is subsequently admitted
without objection.  Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App.
1998).  A.C. testified in detail about the abuse.  She detailed the same
testimony Silva gave regarding the abuse.  There was no objection.  Indeed
there could be no viable hearsay objection, as A.C. testified to what she
personally experienced; appellant does not argue any other basis by which the
evidence could have been excluded.  Because the same evidence to which
Detective Silva testified was admitted through A.C. without objection, there is
no harm.  

We overrule appellant=s second issue.

Conclusion

Having overruled both of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Majority and Concurring Opinions filed December 21, 2006.

Panel consists of
Justices Fowler, Edelman, and Guzman.  (Guzman, J. Concurring)

PublishC Tex. R. App. P. 47.2(b).









[1]  Because the complainant is younger than seventeen,
we use only her initials.





[2]  The complainant lived with her father because her
mother died sometime before  the complainant entered kindergarten.





[3]  Evidence at trial showed that Appellant would
sometimes sleep in A.C.=s bed. 





[4]  For example:

The State has introduced evidence of extraneous crimes
or bad acts other than the one charged in the indictment in this case.  This
evidence was admitted only for the purpose of assisting you, if it does, in
determining the proper punishment for the offense for which you have found the
defendant guilty.  You cannot consider the testimony for any purpose unless you
find and believe beyond a reasonable doubt that the defendant committed such
other acts, if any were committed.  

1 Judge Elizabeth Berry et
al., Texas Criminal Jury Charges, ' 3:440 (Heidi Lowry, ed., James Publ=g Dec. 2005).





[5]  Yzaguirre v. State, 957 S.W.2d 38, 39 (Tex.
Crim. App. 1997) (holding that when the indictment uses Aon or about@
language the State may rely on an offense with a date other than the one listed
in the indictment, so long as the offense occurred anterior to the presentment
of the indictment, within the statutory period of limitation, and the offense
relied upon otherwise meets the description of the offense contained in the
indictment); but see Graves v. State, 176 S.W.3d 422, 434 (Tex. App.CHouston [1st Dist.] 2004, pet. stricken) (explaining that
separate instances of fondling are different offenses under the penal code, not
merely multiple occasions of the same offense).  





[6]  Article 37.07, section 3(a)(1) states in part:

Regardless of the plea and whether the punishment be
assessed by the judge or the jury, evidence may be offered by the state and the
defendant as to any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and, notwithstanding
Rules 404 and 405, Texas Rules of Evidence, any other evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.   

Tex. Code Crim. Proc. art. 37.07, '
3(a)(1) (emphasis added). 





[7]  The eighth witness was the doctor who examined A.C.
for any signs of abuse.  He merely testified that he found no abuse, which was
consistent with A.C.=s claims.





[8]  We recognize this review has considered some matters
of credibility, however, that is exactly what Davis instructs us to do. 
Davis, 13 S.W. at 173 (instructing the reviewing court to consider the
nature of the testimony supporting the verdict, i.e., if it was cogent and
overwhelming, and to consider whether a reasonable mind could believe the
testimony related to the charge error). 





[9]  Appellant also, without citing any authority, argues
that Detective Silva testified to extraneous offenses.  This argument is waived
both for inadequate briefing, and because he did not preserve this argument at
trial.  See Tex. R. App. P. 38.1(h);  Lewis v. State, 557
S.W.2d 515, 517 (Tex. Crim. App. 1977).
Additionally, he cannot show harm because, as we explain below, this evidence
came in without objection later in the guilt/innocence phase of the trial
through A.C.  See Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App.
1996).





[10]  We do not, and need not, determine exactly when the
proceeding begins for purposes of the outcry statute.