

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00151-CR

JOE MENDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2017-411,742, Honorable Jim Bob Darnell, Presiding

December 2, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Joe Mendez, appeals his conviction for possessing with the intent to deliver a controlled substance. Appellant was a passenger in a vehicle when law enforcement officials attempted to stop it after witnessing a traffic violation. The vehicle did not immediately stop. When it did, its occupants, including appellant, were removed after officials obtained consent from the driver to search it. At that point, a sheriff's deputy noticed appellant carrying a knife on his belt, removed it, and frisked appellant for other weapons. During the frisk, the deputy felt something in appellant's pocket and recognized

it as a digital scale and illegal "drug paraphernalia," though appellant denied knowing what it was and suggested it was paper. Both the driver and appellant were detained as the car was searched. Nothing of consequence was found and the driver was allowed to return to the vehicle. Appellant was not. Instead, a deputy noticed the top of appellant's boot protruding from his pants and asked what was in the boot. Appellant said it contained a syringe. Searching the boot resulted in the discovery of the drugs for which appellant pled guilty and convicted. His seven issues on appeal involve the trial court's denial of his motion to suppress. We affirm.

*Issue One – Consent to Search Vehicle*

Appellant initially attacks the search of the vehicle and contends that the law enforcement officials lacked consent. We overrule the issue.

Generally, a defendant who shows no more than mere presence as a passenger in a vehicle when it is searched lacks standing to complain about the search. *Aguirre v. State*, No. 04-16-00452-CR, 2017 Tex. App. LEXIS 5390, at *6 (Tex. App.—San Antonio 2017, no pet.) (mem. op., not designated for publication); *accord Sandoval v. State*, No. 07-10-00471-CR, 2011 Tex. App. LEXIS 5971, at *9 (Tex. App.—Amarillo Aug. 1, 2011, pet. ref'd) (mem.op., not designated for publication) (stating that a passenger generally does not have a possessory interest in an automobile and therefore lacks standing to complain of its search because there is no infringement of his expectation of privacy). Standing arises, though, if the search resulted from an infringement of the passenger's Fourth Amendment rights, *Aguirre*, 2017 Tex. App. LEXIS 5390, at *6, such as when the stop itself was unlawful. *See Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984) (citing *People v. Kunath*, 425 N.E.2d 486 (1981)). Or, it can *arise* if the defendant proves

2

he had a legitimate expectation of privacy in the area searched. *Carroll v. State*, No. 14-13-00735-CR, 2014 Tex. App. LEXIS 13765, at *18 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, no pet.) (mem. op., not designated for publication).

Here, the record illustrates that appellant was a passenger in the vehicle stopped as a result of a traffic violation. He does not 1) contest the initial stop, 2) claim he has an expectation of privacy in the vehicle, or 3) assert that the search of the vehicle arose from a violation of his own constitutional rights. Thus, he failed to satisfy his burden to prove he had standing to complain of the vehicle's search. *See State v. Kima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996) (holding that the burden lies with the defendant to prove he has a legitimate expectation of privacy in the place searched).

*Issue Three – Frisk for Weapons*

We address appellant's third issue next and reserve addressing his second issue later in the opinion. Appellant contends that the State failed to prove the legitimacy of the frisk for weapons he underwent. We overrule the issue.

To justify a frisk for weapons, the officer must reasonably believe that the suspect is armed and dangerous based upon specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. *Lerma v. State*, 543 S.W.3d 184, 191 (Tex. Crim. App. 2018). Here, appellant was seen carrying a knife on his belt. An ordinary prudent officer seeing a knife may reasonably conclude that the person carrying that knife is armed and dangerous. And, even though the knife was removed, that alone did not diminish the reasonableness of the continued frisk because he could have had other weapons. As stated in *Lerma*, "the need to discover weapons did not disappear once the person removed the obvious weapon." *Id.* at 192.

3

*Issue Four – Discovery of Scales*

We next address the contention that "[e]ven if this Court holds a limited pat down for weapons was justified, [the deputy] exceeded the permissible scope of the pat down when he removed the small digital scale in appellant's pocket without probable cause to believe that the item he felt was contraband." We overrule the issue.

Under the "plain feel" doctrine, an officer conducting a weapons frisk may lawfully seize an object having a contour or mass making its identity immediately apparent as contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334 (1993); *Young v. State*, 563 S.W.3d 325, 330 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The object need not be identifiable as a weapon, however. *Young*, 563 S.W.3d at 330 (describing application of the doctrine to "a non-weapon object"). And, though the incriminating character of the object must be immediately apparent without the need for additional investigation or manipulation, *Johnson v. State*, 11-15-00053-CR, 2017 Tex. App. LEXIS 2828, at *8-9 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op., not designated for publication), this aspect of the test does not require actual knowledge of the contraband. *Young*, 563 S.W.3d at 330. The officer need only have probable cause to believe the object is contraband. *Id.* at 330-31.

While frisking appellant here, the officer "felt something in his pocket that . . . felt like to me was probably contraband, more than likely it was digital scales." The same officer also testified that "[w]e deal with that a lot in the streets, so I removed those from his pocket." The object indeed was a set of digital scales. Furthermore, "digital scales are drug paraphernalia," according to the officer, and possessing drug paraphernalia was

a crime rendering appellant subject to arrest.[1] *See Johnson v. State*, No. 02-18-00310-CR, 2019 Tex. App. LEXIS 7658, at *6-7 (Tex. App.—Fort Worth Aug. 26, 2019, no pet.) (mem. op., not designated for publication) (categorizing digital scales as drug paraphernalia).

Apparently before the item was removed, appellant denied knowing what it was and suggested that it may be papers of some sort. That someone not only denies knowing the identity of a hard object in his pocket the size of a cell phone (as were the digital scales, according to appellant) but also suggests the hard object is just paper reasonably can be viewed as effort at deception. And, such deception may be considered as evidence of consciousness of guilt. *Francis v. State*, No. 07-12-00238-CR, 2013 Tex. App. LEXIS 11659, at *4-5 (Tex. App.—Amarillo Sept. 12, 2013, pet. ref'd) (mem. op., not designated for publication).

The foregoing circumstances, when viewed together, were enough to support the trial court's written conclusion that the search of appellant's pocket was justified under the "plain feel" doctrine. *See Carmouche v. State*, 10 S.W.3d 323, 330-31 (Tex. Crim. App. 2000) (upholding the removal of money from appellant's pocket when the officer testified that he immediately recognized the bulge in appellant's pocket as money and "withdrew what he already knew was money").

In arriving at our conclusion, we do not ignore appellant's contention that the video illustrated that the deputy patted appellant's pocket multiple times and even peered into it before extricating the item. Those observations are appellant's interpretation of what

---

[1] The definition of drug paraphernalia includes a scale or balance used or intended for use in weighing or measuring a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(17)(E) (West 2017). And, the scale at bar was found to have a residue on it, which residue was field tested.

the video depicted. Being scenes captured by a vest camera that a law enforcement official wore, they were open to reasonable interpretation. And, as said in *Meekins v. State*, 340 S.W.3d 454 (Tex. Crim. App. 2011), when dealing with what *was* caught on camera, "the trial judge's task is to determine precisely what was said and then what *was* conveyed by the totality of the circumstances." *Id.* at 462. (Emphasis in original). Since the scenes captured in the video did not provide only one indisputable interpretation of events, the trial court, as fact-finder, was not obligated to merely accept appellant's interpretation of those events; and, we must defer to the trial court's factual interpretation of those scenes. *See State v. Duran*, 396 S.W.3d 563, 570-71 (Tex. Crim. App. 2013) (stating that "[a]lthough appellate courts may review *de novo* 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation").[2]

*Issue Five – Illegal Detention*

Next, we address appellant's argument that law enforcement officials "illegally detained [him] after the computer check and vehicle search were complete because all articulated reasonable suspicion was the result of an illegal pat down" and "officers did not diligently seek to confirm or dispel those suspicions." We overrule the issue.

The first portion of the contention is premised on the notion that the frisk and discovery of drug paraphernalia during it were illegal. We found otherwise, as discussed above.

---

[2] We would also note that even if we were to accept appellant's interpretation of the frisk, the video still failed to reveal that the officer lacked knowledge of the item's identity upon first touching it. It captured visual depictions not mental impressions or thoughts. So, it does not belie the deputy's testimony that what he felt was probably contraband and more likely digital scales.

As for the second portion of the argument, appellant suggests that even if the frisk and discovery of drug paraphernalia were legal, the law enforcement officials on the scene failed to exercise diligence in "confirm[ing] or dispel[ling] any reasonable suspicion that [he] was involved in or would soon be involved in drug activity." We reject the proposition for several reasons.

First, multiple grounds were asserted below to suppress the discovery of contraband. Yet, nothing was said about the failure to exercise diligence in attempting to confirm or dispel any reasonable suspicion arising upon discovery of the scales. Indeed, appellant's attack simply focused on establishing that the initial frisk and the ensuing discovery of potential contraband were illegal. In failing to raise the topic of diligence below, appellant failed to preserve it for review. *See Contreras v. State*, No. 09-17-00029-CR, 2018 Tex. App. LEXIS 2389, at *8 (Tex. App.—Beaumont Apr. 4, 2018, no pet.) (mem. op., not designated for publication) (stating that "a motion to suppress asserting multiple grounds that are not argued during the suppression hearing will not preserve the subsequently unasserted grounds for appeal").

Second, even if the argument were preserved, we nonetheless would have to reject it, for the reason we now explain. Appellant is correct when positing that an investigative stop can last no longer than necessary to effectuate the purpose of the stop. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). For instance, if a driver is stopped on suspicion of driving while intoxicated, once the police officer determines that the driver is not impaired, he should be promptly released. *Id.* Yet, during a traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and conduct a computer check on that information. *Id.* And, if during

7

that interim circumstances lead the officer to reasonably suspect other criminal activity is afoot, then the stop may be prolonged. *Flom v. State*, No. 03-17-00697-CR, 2018 Tex. App. LEXIS 6634, at *12-13 (Tex. App.—Austin Aug. 22, 2019, no pet.) (mem. op., not designated for publication). That is, the officer is entitled to pursue plausible theories in attempting to resolve the suspicion that had been created, as long as they act with reasonable diligence. *Fisher v. State*, 481 S.W.3d 403, 408 (Tex. App.—Texarkana 2015, pet. ref'd). So too is the officer free to solicit consent to search the vehicle during that interim, irrespective of whether he has reasonable suspicion to believe other crime is afoot. *Caraway v.* State, 255 S.W.3d 302, 310-11 (Tex. App.—Eastland 2008, no pet.). If the driver grants permission, then it follows that the stop may be extended to effectuate the search, so long as the officer acts with reasonable diligence.

Here, the record illustrates that two people were involved in the stop. One was the female driver and the other was appellant. Furthermore, once the deputy stopped the driver for a traffic violation, approximately 14 minutes lapsed before appellant was arrested for possessing controlled substances. During that time span, the several law enforcement officers on scene divided their tasks, obtained the license of the driver operating the vehicle, sought permission from her to search the vehicle, obtained that permission, removed the occupants to effectuate the search, discovered appellant carrying a knife, discovered a digital scale containing residue in his pocket, heard appellant's denial of knowledge about the cell phone sized object in his pocket, conducted a search of the disheveled interior and trunk of the vehicle, determined that the driver was operating the vehicle under a suspended license, investigated the latter circumstance, allowed the driver to return to the vehicle once the car search ended, discovered from the

8

driver that she had recently undergone urinalysis testing to determine whether she was ingesting drugs, heard the driver admit that her children had tested positive for exposure to controlled substances, discovered the presence of a syringe and controlled substances in appellant's boot, and ultimately arrested appellant. As can be seen, indicia of illicit drugs were sprinkled throughout the 14-minute investigation. Moreover, the discovery of the scale and recognizing the significance of that spurred on the investigation.[3]

It is also notable that the time span between the end of the vehicle search and appellant's ultimate arrest was little more than four to five minutes. Somewhere within that brief period, the drugs were found on appellant. All the foregoing circumstances were and are enough to support a reasonable inference that the law enforcement officers exercised diligence.

*Issue Six – Un-Mirandized Statements*

Appellant next contends that his "un-Mirandized response about a syringe was illegally obtained pursuant to a custodial interrogation when he was asked what was in his boot and had already been told he was going to go to jail for something stupid and the evidence discovered pursuant to this question should be suppressed." In other words, both his response to the question asked and the syringe and drugs discovered upon hearing the response should be suppressed because he was in custody and denied the

---

[3]A deputy can be heard on the video of the stop explaining what led him to think appellant possessed controlled substances. This explanation transpired after the controlled substance was found in appellant's boot. Another law enforcement officer had asked if appellant revealed to the deputy the location of the narcotics. The deputy responded by pointing at the scales and saying, "he had this in his pocket." From that, a fact-finder could reasonably infer that the deputy had prior knowledge about digital scales being used by those involved with drugs, and that knowledge spurred on the investigation.

warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and art. 38.22 of the Texas Code of Criminal Procedure.[4]  We overrule the issue.

For purposes of this issue, we assume *arguendo* that appellant was in custody when a law enforcement official asked about his boot or its contents.  We further assume *arguendo* that no one had admonished appellant per *Miranda* or art. 38.22.  Yet, that would not require the suppression of evidence found by the deputy when acting on appellant's response.  This is so because while statements taken in violation of *Miranda* must be suppressed, other evidence subsequently obtained as a result of those statements need not be unless garnered through coercion.  *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997); *State v. Pena*, 581 S.W.3d 467, 478 (Tex. App.—Austin 2019, no pet.); *Akins v. State*, 202 S.W.3d 879, 890-91 (Tex. App.—Fort Worth 2006, pet. ref'd).  Appellant does not suggest that his answers to the deputy's question arose from coercion, which means that the items found in the boot were not subject to suppression.

And, that appellant's responses themselves were not suppressed is of no consequence or harm under Texas Rule of Appellate Procedure 44.2.  The drugs found by the deputy constituted the *corpus delecti* underlying appellant's conviction, not the responses.  The State being able to legitimately use that *corpus delicti* alone to secure appellant's conviction for possessing a controlled substance, the responses were of no consequence.  In short, the failure to suppress the responses, "just doesn't matter."

---

[4] Article 38.22 generally reiterates (with one addition) the warnings required by *Miranda* once a suspect is in custody.  *Lamper v. State*, No. 07-18-00035-CR, 2018 Tex. App. LEXIS 6788, at *7-8 (Tex. App.—Amarillo Aug. 24, 2018, no pet.) (mem. op., not designated for publication) (comparing the *Miranda* warnings with the art. 38.22 admonishments).

*Issue Seven – Probable Cause to Search Boot*

Next, we address appellant's contention that "[n]o probable cause existed to search Appellant's boot because the circumstances that impliedly gave rise to probable cause were fruit of the poisonous tree." We overrule the issue.

The easy answer to appellant's complaint lies in why the law enforcement officers searched appellant's boot. He told them it contained a syringe. Possessing a syringe may not be illegal *per se*. *Segura v. State*, No. 04-95-00736-CR, 1996 Tex. App. LEXIS 1359, at *6 (Tex. App.—San Antonio Apr. 10, 1996, no pet.) (not designated for publication). Nevertheless, officers have deemed them drug paraphernalia. *See id.* (that being the circumstance before the court); *see also Tate v. State*, 500 S.W.3d 410, 415-16 (Tex. Crim. App. 2016) (wherein the court identified a syringe as drug paraphernalia when undertaking an affirmative links analysis); *Hughitt v. State*, 539 S.W.3d 531, 536 (Tex. App.—Eastland 2018), *aff'd*, No. PD-0275-18, 2019 Tex. Crim. App. LEXIS 940 (Tex. Crim. App. Sept. 25, 2019). Furthermore, possessing a syringe has been held as lawful basis for arresting the individual who possessed it. *Segura,* 1996 Tex. App. LEXIS 1359 *6-7 (stating that while possessing a syringe is not inherently illegal, an "arresting officer is not required to know that the drug paraphernalia was contraband before seizing it; his reasonable belief that it was contraband is sufficient to support the arrest"). And, once arrested, the individual lawfully may be subjected to a search incident to that arrest. *Id.* Here, we have a temporary detention due to a traffic stop, a lawful frisk of appellant, the lawful discovery of a digital scale with residue during the frisk, a lawfully prolonged detention during which appellant was asked about the contents of a boot, and appellant's admission that it held a syringe after a deputy noticed the top of the boot protruding from

appellant's pant leg. If possessing a syringe constitutes probable cause permitting an arrest, according to *Segura*, then it coupled with the earlier discovery of other drug paraphernalia (i.e., digital scales) certainly does, as well. Those circumstances also afforded the officers probable cause to seize the drug paraphernalia (i.e., syringe) from appellant's boot as evidence of the crime. And, while legally in the boot to seize the syringe, the officers encountered the drugs.

*Issue Seven – Harm*

Appellant's final issue deals with harm arising from the purportedly unlawful search, frisk, discovery of drug paraphernalia, and discovery of the drugs. Our having found that none were unlawful, there is no need to address harm. The issue is overruled.

*Issue Two – Consent to Frisk*

We saved issue two for last since it involved whether appellant consented to being frisked after initially exiting the car. Our disposition of issue three relieves us from having to address this issue. Simply put, it does not matter if appellant consented to being frisked since the officers were authorized to do it without consent and to assure their own safety.

We affirm the trial court's judgment.


Brian Quinn
Chief Justice

Do not publish.

12